**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| LIBERTY ACCESS TECHNOLOGIES LICENSING LLC,<br>Plaintiff,<br>v.<br>ASSA ABLOY AB, ASSA ABLOY MOBILE SERVICES AB, and ASSA ABLOY GLOBAL SOLUTIONS AB,<br>Defendants. | Civil Action No. 2:22-cv-00507-JRG-RSP<br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Liberty Access Technologies Licensing LLC ("Liberty Access" or "Plaintiff") files this First Amended Complaint ("FAC") for patent infringement against Defendants ASSA ABLOY AB, ASSA ABLOY Mobile Services AB, and ASSA ABLOY Global Solutions AB (collectively, "Defendants"), alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendants' infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), respectively:

| | U.S. Patent No. | Title | |
|---|---|---|---|
| A. | 9,373,205 | Access Control System And Method For Use By An Access Device | https://patentcenter.uspto.gov/applications/14603434<br><br>https://patents.google.com/patent/US9373205B2/en?oq=9%2c373%2c205 |
| B. | 10,657,747 | Access Control System And Method For Use By An Access Device | https://patentcenter.uspto.gov/applications/16034278<br><br>https://patents.google.com/patent/US10657747B2/en?oq=10%2c657%2c747 |

| | U.S. Patent No. | Title | |
|---|---|---|---|
| C. | 11,373,474 | Access Control System And Method For Use By An Access Device | https://patentcenter.uspto.gov/applications/17646837<br><br>https://patents.google.com/patent/US11373474B2/en?oq=11%2c373%2c474 |

2. Liberty Access seeks injunctive relief and monetary damages.

## PARTIES

3. Liberty Access is a limited liability company organized under the laws of the State of Texas, with a place of business at 815 Brazos Street, Suite 500, Austin, Texas 78701 (Travis County).

4. Liberty Access is the exclusive licensee of the Asserted Patents with all rights to recover for all past, present, and future infringement, including past damages.

5. Defendant ASSA ABLOY AB is a private limited company organized under the laws of Sweden with its primary place of business located at Klarabergsviadukten 90 SE-111 64 Stockholm, Sweden.

6. Defendant ASSA ABLOY Mobile Services AB (“ASSA ABLOY Mobile Services”) is a private limited company organized under the laws of Sweden with its primary place of business located at Förmansvägen 11, SE-117 43 Stockholm, Sweden.

7. Defendant ASSA ABLOY Global Solutions AB (“ASSA ABLOY Global Solutions”) is a private limited company organized under the laws of Sweden with its primary place of business located at Förmansvägen 11, SE-117 43 Stockholm, Sweden.

## ADDITIONAL RELEVANT FACTS ABOUT ASSA ABLOY AB

8. ASSA ABLOY AB is the ultimate parent company of ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and numerous other subsidiaries through which it uses, sells,

and provides its products, solutions, and services.[1]

9. ASSA ABLOY AB has, in filings in United States courts, held itself out as the party ultimately responsible for its and its subsidiaries' business activities in the United States.[2]

10. ASSA ABLOY AB also regularly enforces its United States patents in United States courts against companies it considers to be its competitors in the United States market.[3]

11. ASSA ABLOY AB also reports and profits from the consolidated financial earnings of all its subsidiaries. *See* 2022 Annual Report, at p. 76. ("The [2022] Annual Report of ASSA ABLOY AB (publ.), corporate identity number 556059-3575, contains the consolidated financial statements for the fiscal year 1 January through 31 December 2022, including the nature and focus of the business.") ("2022 Annual Report").[4]

12. ASSA ABLOY AB owns 100% of the stock of its subsidiaries.[5]

13. ASSA ABLOY AB and its subsidiaries share the same board of directors. "The Board of Directors holds ultimate responsibility for effective internal control and has therefore established fundamental documents of significance for financial reporting." [6]

14. Moreover, the Defendants have held out to the public that "ASSA ABLOY AB, is responsible for Group management and provides Group-wide functions. The Parent company's

---

[1] *See, e.g.*, Dkt. No. 13, at 1 ("ASSA ABLOY AB is the immediate parent company of, and 100% owner of ASSA ABLOY GLOBAL SOLUTIONS AB. No other publicly held corporation owns 10% or more of ABLOY GLOBAL SOLUTIONS AB.").

[2] *See, e.g.*, Complaint, *ASSA ABLOY AB v. CPC Patent Techs. Pty. Ltd.*, 3:22-cv-00694 (D. Conn. May 23, 2022).

[3] *See, e.g.*, Complaint, *HID Global Corp. v. Wavelynx Techs. Corp.*, 1:22-cv-00362-UNA (D. Del. March 21, 2022); Complaint, *ASSA ABLOY AB v. Spectrum Brands, Inc.*, 8:15-cv-00775 (C.D. Cal. May 18, 2015).

[4] ASSA ABLOY AB's 2022 Annual Report is available, at https://www.assaabloy.com/group/en/investors/reports-presentations/annual-reports/2022.

[5] *See, e.g.*, *id.* at p. 87.

[6] *See id.*, at p. 63.

revenue consists of intra-Group franchise and royalty revenues." 2022 Annual Report, at p. 78.

15. Defendants have also held out to the public that "[o]ur strategic activities are shared across our divisions to enable and accelerate growth." 2022 Annual Report, at p. 17.

16. On December 1, 2022, ASSA ABLOY AB, through its outside counsel, directed a letter to Liberty Access demanding a license to Liberty Access's patents. That letter discussed "[ASSA ABLOY AB]'s award-winning mobile access technology."

**ADDITIONAL RELEVANT FACTS ABOUT ASSA ABLOY AB SUBSIDIARIES**

17. Upon information and belief, ASSA ABLOY Global Solutions AB is, among other things, "responsible for the processing of [user's] personal data" collected through use and provision of the Accused Products.[7]

18. Upon information and belief, ASSA ABLOY Global Solutions AB collects and stores personal data from users, including, but not limited to when users "provide [their] consent and use [ASSA ABLOY's] mobile access applications."[8] In particular, ASSA ABLOY Global Solutions AB "will collect [a user's] email address, property reservation information, and account information, electronic key, including username and password."[9]

19. Upon information and belief, ASSA ABLOY Global Solutions AB collects and uses this information for strategic business purposes, including but not limited to, inviting customers to register for ASSA ABLOY's services and inviting "end-users to create a mobile key."[10]

20. ASSA ABLOY Global Solutions, Inc. is a wholly owned subsidiary of ASSA ABLOY AB. The vast majority of ASSA ABLOY Global Solutions, Inc.'s highest ranking officers and

[7] *See* https://www.assaabloyglobalsolutions.com/en/privacy-center/privacy-notice.
[8] *Id.*
[9] *Id.*
[10] *Id.*

directors are or were located in Sweden, where ASSA ABLOY AB is located. This is evidenced by ASSA ABLOY Global Solutions, Inc.'s Texas Public Information Report:

**Public Information Report**

**Public Information Report**
**ASSA ABLOY GLOBAL SOLUTIONS, INC.**
Report Year :2021

Information on this site is obtained from the most recent Public Information Report (PIR) processed by the Secretary of State (SOS). PIRs filed with annual franchise tax reports are forwarded to the SOS. After processing, the SOS sends the Comptroller an electronic copy of the information, which is displayed on this web site. The information will be updated as changes are received from the SOS.

You may order a copy of a Public Information Report from open.records@cpa.texas.gov or Comptroller of Public Accounts, Open Records Section, PO Box 13528, Austin, Texas 78711.

| Title | Name and Address |
|---|---|
| DIRECTOR | **CATHARINA TUNBERG**<br>FRMANSVGEN 11 STOCKHOLM, NA SE-117 43 |
| OTHER | **CATHARINA TUNBERG**<br>FRMANSVGEN 11 STOCKHOLM, NA SE-117 43 |
| V.P. | **CHRISTOPHE SUT**<br>ARSTAANGSVAGEN 9 STOCKHOLM, NA SE-117 43 |
| DIRECTOR | **CHRISTOPHE SUT**<br>ARSTAANGSVAGEN 9 STOCKHOLM, NA SE-117 43 |
| V.P. | **MARKUS BOBERG**<br>ARSTAANGSVAGEN 9 STOCKHOLM, NA SE-117 43 |
| DIRECTOR | **MARKUS BOBERG**<br>ARSTAANGSVAGEN 9 STOCKHOLM, NA SE-117 43 |
| PRESIDENT | **NICOLAS AZNAR**<br>AV GUIDO CALOI 1985-G19 SAO PAULO, NA 05802-140 |
| DIRECTOR | **NICOLAS AZNAR**<br>AV GUIDO CALOI 1985-G19 SAO PAULO, NA 05802-140 |

## JURISDICTION AND VENUE

21. Liberty Access repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

22. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. §§ 1331 and 1338(a).

23. Defendants are subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendants' substantial business in this judicial district, including: (i) At least a portion of the infringement alleged herein; and (ii)

regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

24. Specifically, Defendants intend to do and do business in, have committed acts of infringement in, and continue to commit acts of infringement in this District directly, through intermediaries, by contributing to and through their inducement of third parties, and offer their products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

25. Defendants also derive benefits from its presence in the district. With knowledge of the Asserted Patents, Defendants have furthermore encouraged retailers and customers to sell and use, respectively, the Accused Products throughout the United States.




26. Defendants commit acts of infringement in this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products.

27. Upon information and belief and based upon public information, Defendants have committed and continue to commit acts of infringement within this District, including, but not

limited to, out of or on behalf of facilities located at 2001 E President George Bush Highway, Plano, TX 75074,[11] and 777 Watters Creek Blvd, Allen, Texas 75013 (Collin County)[12].




28. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c), which provides that "a Defendant not resident in the United States may be sued in any judicial district."

## THE ACCUSED PRODUCTS

29. Liberty Access repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

30. Based upon public information, Defendants own, operate, advertise, control, sell, import, and/or offer for sale, and instruct their subsidiaries, affiliates, and end users to use the hardware, software, and functionality that allows users to use their Mobile Access features as a key to a hotel room, through marketed products and services, including, but not limited to, the ASSA ABLOY Global Solutions Mobile Access Software Development Kit (SDK), the ASSA ABLOY Global Solutions Mobile Access App, ASSA ABLOY's Mobile Access Services

---

[11] *See, e.g.,* https://campaigns.assaabloyglobalsolutions.com/us-hotellocks.
[12] *See, e.g.,* https://www.hospitalitynet.org/news/4093036.html.

(including but not limited to ASSA ABLOY's Seos key credential technology), ASSA ABLOY's Visionline system, and ASSA ABLOY's VingCard Electronic Locks (including but not limited to the Novel, Essence, Signature RFID, Classic RFID, Allure, and Flex models), (collectively "Accused Products").[13]




31. In marketing the Accused Products, the Defendants represent that "You can choose between three variants of the solution depending on your needs."[14]

[13] *See, e.g.*, https://www.assaabloyglobalsolutions.com/en/hospitality-solutions#gw-group-cards-fccbe61fb0; and https://www.assaabloyglobalsolutions.com/downloadables/solution-brochures/mobile-access/Mobile%20Access%20Brochure%20English.pdf.
[14] https://www.assaabloyglobalsolutions.com/hospitality/documents/Mobile-Access-Solutions-Brochure-EN.pdf.



# Our Mobile Access options for hotels

You can choose between three variants of the solution depending on your needs.

## Customer Integration

This solution is created for hotels with their own app initiatives that want to integrate mobile access into their own apps and back end systems. ASSA ABLOY Global Solutions provides a Mobile Access Software Development kit (SDK) together with dedicated onboarding services to facilitate seamless integration.

## Third Party Certified Partner App

This solution suits hotels that want mobile app functionality beyond just access control, but don't yet have their own in-house app initiatives. They can here pick a solution from one of our selected app specialist partners, who through our Certified Partner Program already have integrated our mobile access functionality into their products.

## ASSA ABLOY Global Solutions Mobile Access App

This is our own ready-to-use, off-the-shelf solution. The app suits hotels that want to provide basic mobile access solutions to their guests in a simple to use format. There are no integrations or third-party dependencies required.

We publish a general app that is available in the App Store and on Google Play. Through an administration portal, hotels can customize their digital key graphics to reflect company branding or design. This will then show in a "Passbook" inspired style for the hotel to use.

## Unlock Your Door in a Second with Your iPhone or Apple Watch

With room key in Apple Wallet, guests can access their rooms, elevators, and common spaces like the gym and the pool using just their iPhone or Apple Watch. It's easy, convenient and private. Room key in Apple Wallet integrates into existing access control systems, is simple to distribute and manage, and takes advantage of the built-in security features of iPhone and Apple Watch.

32. The Accused Products provide features, functionality, hardware, and software that, e.g., permit a hotel to enter a hotel room reservation for a user into a reservation system.[15]

[15] *See* https://youtu.be/YYvYMml-rj8.







33. The Accused Products also generate reservation information based on the user's reservation and transmit that reservation information to an application on a portable device of the user, as seen in the screenshots below. *Id.*


ASSA ABLOY Global Solutions Mobile Access
John Doe
Operator
Augusto Hotel
Reservations
Building status
Reservations
Import guests
Reservations
New reservation
Search
Guests
Status
Room
Reference
Check in
Check out
Keys
Jane Doe
Key delivered to mobile device
3609
booking
2020-07-06
2020-07-10
0:43 / 1:15


3609
Guest receives key
to Mobile Access app
0:56 / 1:15


History of Jane Doe's stay
Guest checked in
✓ 10:05 (2020-07-06)
Key issued by front desk
✓ 10:05 (2020-07-06)
Key ready for delivery
✓ 10:05 (2020-07-06)
Key delivered to mobile device
✓ 10:06 (2020-07-06)
Key used at premises
Close
Hotel gets confirmation that
Mobile Key has been issued to Guest
0:51 / 1:15


The lock decrypts the mobile key and unlocks the door.
1
Guest confirms mobile booking and hotel server initializes check in.
6
The guest's smartphone receives the encrypted key in a secure key vault within the app. When presented to the lock, the access app transmits the encrypted key to the lock through a secure communication channel.
2
The hotel's property management system (PMS) allocates a room and requests Visionline to issue a key.
5
Visionline generates a digital key, and transfers it to the cloud-based ASSA ABLOY Mobile Services, for secure Over The Air delivery.
3
The cloud-based ASSA ABLOY Mobile services encrypts and securely delivers the mobile key to the assigned phone.
4


1
The hotel guest downloads the app, registers his/her smartphone through the app and allows push notifications.
2
The guest makes a reservation and approximately 24 hours before arrival, he/she is invited through a push notification to use mobile keys and start the check-in process.
3
The guest receives a push notification noting that he/she is checked in and the app will update with the room number and the mobile key when the room is ready.
4
On arrival the guest can bypass the front desk and go directly to his/her room.
5
After ensuring that the Bluetooth is enabled, the guest simply holds the smartphone to the door lock, waits for the solid green light and enters the room.

34. The application on the portable device transmits a message to an access device of a door lock and the access device activates the door lock. *Id.*









35. Upon information and belief, the Accused Products are configured in a manner that enables users (including but not limited to the Defendants' affiliates, customers, and/or end users) to infringe the Asserted Patents.[16]




*Figure 1: Example of online configuration. Several other configurations are possible; see Appendix C for some examples.*

36. Based upon public information, Defendants, directly and/or through their agents, intermediaries, customers, and/or employees use, advertise, provide, and/or educate third parties about the Accused Products.

37. For instance, Defendants encourage, instruct, enable or otherwise cause end users to upgrade Mobile Access features that infringe on the Asserted Patents.

[16] *See, e.g.*, https://fccid.io/Y7V-683081150C1/Users-Manual/Users-Manual-3402004.

https://www.assaabloyglobalsolutions.com/en/hospitality-solutions/electronic-locks-for-hotels/vingcard-signature-for-hotels

## Upgrading to RFID and Mobile Access

Your VingCard Signature door locks guarantee a simple and straightforward process to upgrading to RFID and Mobile Access. Using state-of-the art data encryption technology, provide both employees and guests with the ultimate in peace of mind.

## Technical requirements

**Lock system**
The latest generation of VingCard´s RFID locks Classic, Signature, Essence and Allure are all compatible with Mobile Access. The only thing needed is to add a small Bluetooth Low Energy board to the lock.




Classic RFID | Signature RFID | Essence | Allure

Even with older versions of lock systems it's possible to install Mobile Access. You can keep most of the lock hardware and just upgrade the reader electronics to the latest RFID version and add the Bluetooth Low Energy board.

**Software**
The latest version of Visionline is needed together with a Mobile Access license option.

It connects securely to the cloud-based ASSA ABLOY Global Solutions Mobile Access services.

38. Moreover, using the ASSA ABLOY brand, Defendants ASSA ABLOY AB and ASSA ABLOY Global Solutions AB, advertise that their VingCard Classic RFID allows customers to "go contactless in a few short steps."

https://www.assaabloyglobalsolutions.com/en/hospitality-solutions/electronic-locks-for-hotels/vingcard-classic-for-hotels



## VingCard Classic

Classic RFID derives from the standard Classic lock and allows you to go contactless in a few short steps if you already have standard Classic installed. With its sleek and elegant design, available in all VingCard lock finishes, you now have a second method of upgrading to RFID functionality depending on your choice of style.

39. Using the ASSA ABLOY brand, Defendants ASSA ABLOY AB and ASSA ABLOY Global Solutions AB, further advertise Visionline as a "patented wireless locking solution[ that] provides properties with the ability to manage both offline- or online-based locks, with online mode offered through Radio Frequency communication using the Zigbee high security open platform."[17]

https://www.assaabloyglobalsolutions.com/en/hospitality-solutions/access-management-systems-for-hotels




Visionline represents what it means to ensure a safe, yet seamless hotel environment by equipping properties with the industry's highest security standards.

A patented wireless locking solution, Visionline provides properties with the ability to manage both offline- or online-based locks, with online mode offered through Radio Frequency communication using the Zigbee high security open platform. An access management platform designed to address the diverse and unique needs of each hotel, Visionline also offers a range of security, efficiency and guest satisfaction enhancing features depending on the mode of implementation.

With Visionline, guest satisfaction and convenience come virtually guaranteed. When integrated with online door locks and should a guest wish to extend their stay or switch guestrooms, Visionline allows staff to make such updates without requiring guests to visit the front desk in order to be issued a new key.

40. Upon information and belief, the Accused Products—including but not limited to, for example, ASSA ABLOY's VingCard Classic RFID lock[18] and Visionline platform—are configured and used to connect to users' mobile devices in a manner that enables users (including but not limited to the Defendants' affiliates, customers, and/or end users) to infringe the Asserted Patents.[19]

---

[17] https://www.assaabloyglobalsolutions.com/en/hospitality-solutions/access-management-systems-for-hotels.

[18] Notably, the technology underlying the VingCard Classic RFID (and other Accused Products and technologies with features that infringe the Asserted Patents) are registered under an FCC ID code associated with Defendant ASSA ABLOY Global Solutions AB's FCC Grantee code, Y7V. *See* https://fccid.io/Y7V-LCU6351C1. In fact, "ASSA ABLOY Global Solutions Norway AS" registered the VingCard RFID technology with the United States Federal Communications Commission.

[19] *See* https://fccid.io/Y7V-LCU6351C1/User-Manual/User-Manual-4012647.pdf.




# 1. Introduction

The *VingCard Classic RFID* lock is a standalone electronic lock with RFID (*radio frequency identification*) technology, which can also be online by ZigBee [1]. *VingCard Classic RFID* is compatible with the Visionline system. The lock has LED signals and can also be configured for sound signals [2]; see information about configuring the beeper in *section 1.1* below. ***Note:*** The *VingCard Classic RFID* lock can be used at new installations, or as an upgrade from *VingCard Classic mag;* in the latter case, only add the RFID reader by replacing the top cover.




- *LCU 6351* can (in addition to the regular green/yellow/red LED signals) be configured to show a flashing blue LED signal when the BLE radio is searching for a mobile device to connect to:

1. Connect the service cable to the lock/elevator controller/ remote controller.
2. Choose **Configure lock** in the left pane of *Lock Service 3G*.
3. In the upper drop-down-menu, choose 'Configure blue LED'.
4. In the lower drop-down-menu, choose 'ON'.
5. Click the **Set** button.

41. Using the ASSA ABLOY brand, Defendants explain that ASSA ABLOY's VingCard Signature RFID lock has a "[r]eader with built-in BLE or mobile access board add-on,"[20] and ASSA ABLOY's VingCard Classic RFID lock has a "[r]eader with built-in BLE."

42. Upon information and belief, ASSA ABLOY's door locks, including but not limited to the Defendants' VingCard Classic RFID, are equipped with (at least) a ZigBee endnode, which enable online use of the Accused Products.[21]

---

[20] *See, e.g.*, https://www.assaabloyglobalsolutions.com/downloadables/product-sheets/electronic-locks/vingcard-signature/VingCard%20Signature%20RFID%20Product%20Sheet%20English.pdf

[21] *See*, *e.g.*, https://fccid.io/Y7V-LCU6351C1/User-Manual/User-Manual-4012647.pdf.




43. Each of the Accused Products is manufactured by and imported and distributed in the United States and this judicial district by and/or at the direction and control and/or instigation of Defendants, who are responsible for the infringing activity identified in this FAC.

44. On information and belief, Defendants direct and completely and/or effectively control, and/or instigate, the conduct of its subsidiaries and affiliates, including, but not limited to, ASSA ABLOY Global Solutions, Inc. ("AAGS, Inc."), to design, develop, market, advertise, manufacture, package, brand, offer for sale, and sell the Accused Products in and into the United States.

45. Defendants exercise complete domination and control over their subsidiaries and affiliates, including, but not limited to, AAGS, Inc., and/or direct and completely and/or effectively control all external and internal workings of those subsidiaries and affiliates.

46. On information and belief no employee of AAGS, Inc. directs and controls the negotiation or execution of agreements with United States customers of the Accused Products, and to the extent any AAGS, Inc. employee is or was involved, such involvement is or was at the direction or control of one or more of the Defendants. Defendants' employees direct, control, manage, and execute the business dealings with U.S. customers and all activities associated with

U.S. sales.

47. Upon information and belief and based on public information, Defendants provide and distribute instructions that guide users to use the Accused Products in an infringing manner, through their various services, including but not limited to ASSA ABLOY's Customer Support Desk, Customer Online Tool, ServiceNow (including but not limited to ASSA ABLOY's Live Chat, Service Catalog, Knowledge Base [which includes Self Help, Guides, Manuals, and Service News], and System Status), and Professional Services (including but not limited to Mobile Key Setup / Go Live Service, PMS Implementations, Server migrations, Database Rebuilds, Remote System, Upgrades, and Specialized Services).[22]

[22] *See, e.g.*, at https://www.assaabloyglobalsolutions.com/downloadables/Industry-brochures/hospitality/regional-hotel-brochures/am-brochures/Hospitality_Brochure_AMERICAS_English.pdf.

## Customer Support

Staffed with seasoned technical support representatives, our Support Desk is positioned to provide you with the efficient and effective technical telephone support 24 hours a day, 7 days a week, 365 days a year. Our team is dedicated to making sure you have the support you need to keep your business running at top efficiency.

**Contact us via our new online support tool by registering at:**

.com my.assaabloyglobalsolutions.com/assaabloy

For all other issues, encourage our customers to use our Customer Online Tool. ServiceNow provides users with the following abilities:

- **Live Chat** – Contact Support (available Mon-Fri, 7a-7p CST)
- **Service Catalog** – Open a case for technical support and request services (such as licenses, server migrations, etc.)
- **Knowledge Base** – Self Help, Guides, Manuals, and Service News
- **System Status** – planned service availability

**Email us to learn more about our customer support contracts and warranty:**

SupportContracts.nam.globalsolutions@assaabloy.com

## Professional Services

- Server migrations
- Database Rebuilds
- Remote System Upgrades
- Mobile Key Setup / Go Live Service
- PMS Implementations
- Specialized Services

**For critical issues, contact us by phone and speak with a technician:**

1-800-225-8464 \| Option 2 Critical issues such as properties that are completely down or unable to make keys.

48. Upon information and belief and based on public information, through these services, Defendants provide and distribute instructions—including but not limited to user guides, manuals, trainings, service portals, and other instructions—that guide users to use the Accused Products in an infringing manner.

49. For example, upon information and belief and based on public information, Defendants own, operate, direct, and are responsible for the website https://my.assaabloyglobalsolutions.com/assaabloy. Upon information and belief and based on public information, through this website, Defendants provide and distribute instructions that guide users to use the Accused Products in an infringing manner.[23]

[23] *See, e.g.*, https://my.assaabloyglobalsolutions.com/assaabloy?id=csm_index.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,373,205**

50. Liberty Access repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

51. The USPTO duly issued U.S. Patent No. 9,373,205 (the "'205 patent") on June 21, 2015, after full and fair examination of Application No 14/603,434, which was filed on January 23, 2015. *See* '205 patent, at p. 1. A Reexamination Certificate was issued on February 25, 2022, after supplemental examination of application No. 96/000,367. *See id.,* at pp.18–21.

52. Liberty Access is the exclusive licensee of the '205 patent with all substantial rights, and interest in and to the '205 patent, including the sole and exclusive right to prosecute this action and enforce the '205 patent against infringers, and to collect damages for all relevant times.

53. Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '205 patent.

54. The claims of the '205 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that allow for secure access to control of a door lock based on information contained in a current reservation certificate.

55. The written description of the '205 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art priority date. The '205 patent also identifies and circumscribes all information necessary for a skilled artisan to

perform each limitation in the claims in light of that which was known in the art at the priority date.

56. Defendants have infringed one or more claims of the ’205 patent by using, providing, supplying, or distributing the Accused Products.

57. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 5 of the ’205 patent.

58. For example, the Accused Products, including but not limited to ASSA ABLOY’s Mobile Access App, Mobile Access Services (including but not limited to ASSA ABLOY’s Seos technology, and SDK), Visionline platform, and VingCard Signature RFID Electronic Lock technology, provide an access device for use in an access control system, the access device comprising: a processor having control of a door lock; and a communication module connected to the processor, the processor is configured to receive a reservation certificate presented by a portable terminal through the communication module; wherein, when a current reservation certificate that comprises an interval of a reservation is presented by the portable terminal, the processor is configured to compare the interval of the reservation of the current reservation certificate to a current time accessible to the processor, determine the current time is within the interval of the reservation, and activate the door lock to allow the portable terminal to unlock the door lock during the interval of the reservation, as recited in claim 5.

59. The processor of the Accused Products also has access to the current time, the reservation certificate comprises data representative of an interval of the reservation, and the processor activates the door lock during the interval, as recited in claim 5.

60. For example, ASSA ABLOY’s Mobile Access App and/or Mobile Access Services (including but not limited to ASSA ABLOY’s Seos technology, SDK, and/or Visionline platform),

has access to the current time, the reservation certificate comprises data representative of an interval of the reservation, and the processor activates the door lock during the interval, as recited in claim 5.[24]







[24] https://www.youtube.com/watch?v=hM5enp7vvcM.

61. Liberty Access incorporates by reference, as if they were set forth fully herein, its preliminary infringement contentions for the ’205 patent, due and dated no later than May 16, 2023, which show that the infringement allegations of Liberty Access are plausible.

62. Since at least December 1, 2022, and as early as August of 2022, Defendants have also indirectly infringed and continue to indirectly infringe one or more claims of the ’205 patent by inducing others to directly infringe one or more claims of the ’205 patent. Defendants have induced and continue to induce their subsidiaries, parents, partners, affiliates, employees, and end-users, including, but not limited to, AAGS, Inc. and Defendants’ customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the ’205 patent by using the Accused Products. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the ’205 patent, including, for example, claim 5 of the ’205 patent. Such steps by Defendants included, among other things, advising or directing personnel, subsidiaries, affiliates, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendants are performing these steps, which constitutes induced infringement with the knowledge of the ’205 patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the ’205 patent. Defendants’ inducement is ongoing.

63. To the extent that Defendants are not the only direct infringer of the ’205 patent, they instruct their subsidiaries and affiliates including, but not limited to, AAGS, Inc., and customers on how to infringe the ’205 patent through their support and sales to them.

64. Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the ’205 patent. Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the ’205 patent by personnel, contractors, subsidiaries, affiliates, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the ’205 patent including, but not limited to, provided access to coding, software, or functionalities that allow customers and end users to incorporate functionality from Defendants’ applications into those customers’ and end users’ proprietary brand applications or websites. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’205 patent, including, for example, claim 5 of the ’205 patent. The special features include, for example, the method recited in claim 5, including all the intermediary steps. The special features constitute a material part of the invention of one or more of the claims of the ’205 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants’ contributory infringement is ongoing.

65. Defendant ASSA ABLOY AB’s subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., are alter egos of ASSA ABLOY AB, and ASSA ABLOY AB is therefore responsible and liable for any activities performed by its subsidiaries on ASSA ABLOY AB’s behalf in offering for sale, testing, selling, and/or importing the Accused Products in or into the United States and

instructing or training end users to use the Accused Products in the United States. ASSA ABLOY AB directs and completely and/or effectively controls the conduct of its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc. ASSA ABLOY AB controls the internal business operations, workings, and affairs of its subsidiaries and related companies. ASSA ABLOY AB and its subsidiaries do not observe and enforce corporate formalities and share common executive level leadership. The relationship between ASSA ABLOY AB and its subsidiaries, parents, and related entities is a sham at least because ASSA ABLOY AB directs and controls all external and internal activities of its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., and all key United States-market strategy, implementation, and sales decisions are made solely by ASSA ABLOY AB and its direct employees.

66. ASSA ABLOY AB is also liable for the actions of its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., as to the use, sale, offer for sale, testing, or import in or into the United States of the Accused Products under agency theory and/or because its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., function as mere agents of ASSA ABLOY AB as to the Accused Products. Any and all activities taken by ASSA ABLOY AB's subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., relating to the use, sale, offer for sale, or import in or into the United States of the Accused Products are and/or were instigated and directed by ASSA ABLOY AB, and are therefore attributable to ASSA ABLOY AB.

67. Based upon public information, ASSA ABLOY AB has intentionally induced and continues to induce infringement of one or more patent claims in this district and elsewhere in the United States by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise cause third parties including, but not limited to, its subsidiaries, customers, and end users including to offer for sale, sell, import into the United States, and/or use the Accused Products in an infringing manner. To the extent that ASSA ABLOY AB is not the only direct infringer, it instructs its subsidiaries, customers, and end users on how to infringe the Accused Products through its support and sales to them. ASSA ABLOY AB has entered into agreements with its subsidiaries stating its intent and desire that those subsidiaries use, sell, offer to sale, train or instruct customers and/or end users to use, and/or import the Accused Products in and/or into the United States.[25]




[25] *See, e.g.*, https://campaigns.assaabloyglobalsolutions.com/us-hotellocks.




68. Defendants had knowledge of the ’205 patent at least as of December 1, 2022, when Defendants’ counsel sent Plaintiff’s counsel a letter on behalf of Defendants demanding a license to Liberty Access’s patents, but as early as August of 2022, when one of Defendants’ alleged customers was accused of infringing the ‘205 patent.

69. On information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff’s patent rights).

70. Defendants’ actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

71. Since at least December 1, 2022, and as early as August of 2022, Defendants’ direct and indirect infringement of one or more claims of the ’205 patent was, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff’s rights under the patent.

72. Plaintiff has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Plaintiff in an amount that compensates it for such

infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

73. Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Plaintiff has and will continue to suffer this harm by virtue of Defendants' infringement of one or more claims of one or more claims of the '205 patent. Defendants' actions have interfered with and will continue to interfere with Plaintiff's ability to license technology. The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology. The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**<u>COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,657,747</u>**

74. Liberty Access repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

75. The USPTO duly issued U.S. Patent No. 10,657,747 (the "'747 patent") on May 19, 2020, after full and fair examination of Application No. 16/034,278, which was filed on July 12, 2018. *See* '747 patent, at p. 1.

76. Liberty Access is the exclusive licensee of the '747 patent with all substantial rights, and interest in and to the '747 patent, including the sole and exclusive right to prosecute this action and enforce the '747 patent against infringers, and to collect damages for all relevant times.

77. Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '747 patent.

78. The claims of the ’747 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods for secure access to control of a door lock based on information contained in a reservation certificate.

79. The written description of the ’747 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The ’747 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

80. Defendants have infringed and continue to infringe one or more claims of the ’747 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

81. Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the ’747 patent.

82. For example, the Accused Products, including but not limited to the Mobile Access products and services, including but not limited to ASSA ABLOY’s Mobile Access App, ASSA ABLOY’s Seos technology, SDK, and/or Visionline platform, and VingCard Signature RFID Electronic Lock, provide an access control system comprising an access device comprising a communication module connected to a processor having control of a door lock; a secure reservation interface to receive a reservation request from a first device for a reservation at a given

destination, the reservation interface comprising one or more screens for receiving a selection of a location at the destination and an interval of the reservation; a reservation server, in communication with the reservation interface and a network, to receive the reservation request for the destination that includes a selected location at the destination and an interval of the reservation; issue a reservation certificate describing the interval of the reservation based on the reservation request and the selected location; and 3) transmit, *via* the network, from the reservation server to a second device distinct from the first device, the reservation certificate and a communication setting corresponding to the access device, d) an application installed on the second device to receive the reservation certificate and the communication setting corresponding to the access device, wherein the application wirelessly transmits the reservation certificate to the access device using the communication setting upon receipt of a command to activate the door lock; and e) wherein the access device receives the reservation certificate from the application based on use by the application of the communication setting, and the processor activates the door lock based on at least the receipt of the reservation certificate.


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
ASSA ABLOY
Reservations
Gustav Hagangen
Start
Register
Register
Name
Gustav Hagången
E-mail
gustav.hagangen@assaabloy.com
Reference
ref12345
Check in
2016-05-25
Check out
yyyy-mm-dd
May 2016
Register
Hotel creates a new reservation.
0:16 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
6
Share
Download
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
All
From ASSA ABLOY Global Sol
VingCard Novel
1:16
ASSA ABLOY
1.4K views
The Elsafe


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
ASSA ABLOY Hospitality
New reservation at City Center Hotel
Guest receives an email about reservation and possibility to use phone to open lock.
0:21 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
6
Share
Download
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
All
From ASSA ABLOY Global Sol...
Related
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views • 9 months ago
1:16
The Elsafe Sentinel


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
ASSA ABLOY
Hospitality Mobile Access
Guest downloads app and checks in.
0:31 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
6
Share
Download
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
All
From ASSA ABLOY Global Sol...
Related
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views • 9 months ago
1:16
The Elsafe Sentinel


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
Welcome!
Check-in is open
City Center Hotel
25 - 28 maj
START CHECK IN
ADDRESS
CONTACT
WEBSITE
0:33 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
6
Share
Download
All
From ASSA ABLOY Global Sol...
Related
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views · 9 months ago
1:16
The Elsafe Sentinel


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
Check out
2016-05-28
Room
Delete
Edit
Add guest
E-mail
gustav.hagangen@assaabloy.com
Estimated time of arrival
15:00
Issue Key
Edit
Hotel clicks on issue key.
0:37 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
6
Share
Download
All
From ASSA ABLOY Global Sol...
Related
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views · 9 months ago
1:16
The Elsafe Sentinel


https://www.youtube.com/watch?v=W4aOjMIMoH0
Issue Mobile Key
Room number: 101
Guest: Gustav Hagängen
Reference: ref12345
Common rooms: Gym Parking Swimming Pool VIP Lounge
Close
Issue Key
0:43 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views · 9 months ago
The Elsafe Sentinel


https://www.youtube.com/watch?v=W4aOjMIMoH0
16:01
Guest receives key on the phone.
0:48 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views · 9 months ago
The Elsafe Sentinel


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
Guest opens the lock.
0:53 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
6
Share
Download
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
All
From ASSA ABLOY Global Sol...
Related
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views • 9 months ago
1:16
The Elsafe Sentinel


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
Ref123456
2016-05-25
2016-05-28
101
Guests
Name
Gustav Hagängen
Gustav Hagängen has used the mobile key.
E-mail
gustav.hagangen@assaabloy.com
Common rooms
Swimming Pool, Parking, Gym
Hotel gets confirmation that Guest has used the key at the door.
1:02 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
6
Share
Download
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
All
From ASSA ABLOY Global Sol...
Related
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views • 9 months ago
1:16
The Elsafe Sentinel

.

83. Liberty Access incorporates by reference, as if they were set forth fully herein, its preliminary infringement contentions for the ’747 patent, due and dated no later than May 16, 2023, which show that the infringement allegations of Liberty Access are plausible.

84. Since at least December 1, 2022, and as early as August of 2022, Defendants have also indirectly infringed and continue to indirectly infringe one or more claims of the ’747 patent by inducing others to directly infringe one or more claims of the ’747 patent. Defendants have induced and continue to induce their subsidiaries, parents, partners, affiliates, employees, and end-users, including, but not limited to, AAGS, Inc. and Defendants’ customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the ’747 patent by using the Accused Products. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the ’747 patent, including, for example, claim 1 of the ’747 patent. Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendants are performing these steps, which constitutes induced infringement with the knowledge of the ’747 patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the ’747 patent. Defendants’ inducement is ongoing.

85. To the extent that Defendants are not the only direct infringer of the ’747 patent, they instruct their subsidiaries and affiliates including, but not limited to, AAGS, Inc., and customers on how to infringe the ’747 patent through their support and sales to them.

86. Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the ’747 patent. Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the ’747 patent by personnel, contractors, subsidiaries, affiliates, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the ’747 patent including, but not limited to, provided access to coding, software, or functionalities that allow customers and end users to incorporate functionality from Defendants’ applications into those customers’ and end users’ proprietary brand applications or websites. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’747 patent, including, for example, claim 1 of the ’747 patent. The special features include, for example, the method recited in claim 1, including all the intermediary steps. The special features constitute a material part of the invention of one or more of the claims of the ’747 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants’ contributory infringement is ongoing.

87. Defendant ASSA ABLOY AB’s subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., are alter egos of ASSA ABLOY AB, and ASSA ABLOY AB is therefore responsible and liable for any activities performed by its subsidiaries on ASSA ABLOY AB’s behalf in offering for sale, testing, selling, and/or importing the Accused Products in or into the United States and

instructing or training end users to use the Accused Products in the United States. ASSA ABLOY AB directs and completely and/or effectively controls the conduct of its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc. ASSA ABLOY AB controls the internal business operations, workings, and affairs of its subsidiaries and related companies. ASSA ABLOY AB and its subsidiaries do not observe and enforce corporate formalities and share common executive level leadership. The relationship between ASSA ABLOY AB and its subsidiaries, parents, and related entities is a sham at least because ASSA ABLOY AB directs and controls all external and internal activities of its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., and all key United States-market strategy, implementation, and sales decisions are made solely by ASSA ABLOY AB and its direct employees.

88. ASSA ABLOY AB is also liable for the actions of its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., as to the use, sale, offer for sale, testing, or import in or into the United States of the Accused Products under agency theory and/or because its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., function as mere agents of ASSA ABLOY AB as to the Accused Products. Any and all activities taken by ASSA ABLOY AB's subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., relating to the use, sale, offer for sale, or import in or into the United States of the Accused Products are and/or were instigated and directed by ASSA ABLOY AB, and are therefore attributable to ASSA ABLOY AB.

89. Based upon public information, ASSA ABLOY AB has intentionally induced and continues to induce infringement of one or more patent claims in this district and elsewhere in the United States by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise cause third parties including, but not limited to, its subsidiaries, customers, and end users including to offer for sale, sell, import into the United States, and/or use the Accused Products in an infringing manner. To the extent that ASSA ABLOY AB is not the only direct infringer, it instructs its subsidiaries, customers, and end users on how to infringe the through its support and sales to them. ASSA ABLOY AB has entered into agreements with its subsidiaries stating its intent and desire that those subsidiaries use, sell, offer to sale, train or instruct customers and/or end users to use, and/or import the Accused Products in and/or into the United States.

90. Defendants had knowledge of the ’747 patent at least as of December 1, 2022, when Defendants’ counsel sent Plaintiff’s counsel a letter on behalf of Defendants demanding a license to Liberty Access’s patents, but as early as August of 2022, when one of Defendants’ alleged customers was accused of infringing the ‘747 patent.

91. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff’s patent rights.

92. Defendants’ actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

93. Since at least December 1, 2022, and as early as August of 2022, Defendants’ direct and indirect infringement of one or more claims of the ’747 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff’s rights under the patent.

94. Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Plaintiff in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

95. Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Plaintiff has and will continue to suffer this harm by virtue of Defendants' infringement of one or more claims of one or more claims of the '747 patent. Defendants' actions have interfered with and will continue to interfere with Plaintiff's ability to license technology. The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology. The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 11,373,474

96. Liberty Access repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

97. The USPTO duly issued U.S. Patent No. 11,373,474 (the "'474 patent") on June 28, 2022, after full and fair examination of Application No. 17/646,837, which was filed on January 3, 2022. *See* '474 patent, at p. 1.

98. Liberty Access is the exclusive licensee of the '474 patent with all substantial rights, and interest in and to the '474 patent, including the sole and exclusive right to prosecute this action and enforce the '474 patent against infringers, and to collect damages for all relevant times.

99. Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the ’474 patent.

100. The claims of the ’474 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods secure access to control of a door lock based on information contained in a reservation certificate.

101. The written description of the ’474 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The ’474 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

102. Defendants have infringed and continue to infringe one or more claims of the ’474 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

103. Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents at least claim 1 of the ’474 patent.

104. For example, the Accused Products, including but not limited to ASSA ABLOY’s ASSA ABLOY’s Mobile Access App, Mobile Access Services (including but not limited to ASSA ABLOY’s Seos technology, and SDK), Visionline platform, and VingCard Signature RFID

Electronic Lock technology, provide an access control system comprising an access device comprising a communication module connected to a processor having control of a door lock, an application on a portable terminal and a server to provide a communication setting to the application, the communication setting corresponding to the access device, and to further provide to the application a reservation certificate comprising an interval of a reservation, wherein the application compares the interval of the reservation to a current time accessible to the application to determine if the reservation certificate is current and activates the door lock by communicating with the access device *via* the communication setting when the application determines that the reservation certificate is current.


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
ASSA ABLOY
Hospitality Mobile Access
Guest downloads app and checks in.
0:31 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
6
Share
Download
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
All
From ASSA ABLOY Global Sol...
Related
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views • 9 months ago
1:16
The Elsafe Sentinel


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
Welcome!
Check-in is open
City Center Hotel
25 - 28 maj
START CHECK IN
ADDRESS
CONTACT
WEBSITE
0:33 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
6
Share
Download
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
All
From ASSA ABLOY Global Sol...
Related
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views • 9 months ago
1:16
The Elsafe Sentinel


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
16:01
onsdag 25 maj
Mobile Access
Your key for reservation at City Center Hotel has been delivered
dra för att låsa upp
Guest receives key on the phone.
0:48 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
6
Share
Download
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
All
From ASSA ABLOY Global Sol...
Related
VingCard Novel
1:16
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views • 9 months ago
The Elsafe Sentinel


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
Guest opens the lock.
0:53 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
6
Share
Download
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
All
From ASSA ABLOY Global Sol...
Related
VingCard Novel
1:16
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views • 9 months ago
The Elsafe Sentinel

105. Liberty Access incorporates by reference, as if they were set forth fully herein, its preliminary infringement contentions for the ’474 patent, due and dated no later than May 16, 2023, which show that the infringement allegations of Liberty Access are plausible.

106. Since at least December 1, 2022, and as early as August of 2022, Defendants have also indirectly infringed and continue to indirectly infringe one or more claims of the ’474 patent by inducing others to directly infringe one or more claims of the ’474 patent. Defendants have induced and continue to induce their subsidiaries, parents, partners, affiliates, employees, and end-users, including, but not limited to, AAGS, Inc. and Defendants’ customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the ’474 patent by using the Accused Products. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the ’474 patent, including, for example, claim 1 of the ’474 patent. Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendants are performing these steps, which constitutes induced infringement with the knowledge of the ’474 patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the ’474 patent. Defendants’ inducement is ongoing.

107. To the extent that Defendants are not the only direct infringer of the ’474 patent, they instruct their subsidiaries and affiliates including, but not limited to, AAGS, Inc., and customers on how to infringe the ’474 patent through their support and sales to them.

108. Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the '474 patent. Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the '474 patent by personnel, contractors, subsidiaries, affiliates, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '474 patent including, but not limited to, provided access to coding, software, or functionalities that allow customers and end users to incorporate functionality from Defendants' applications into those customers' and end users' proprietary brand applications or websites. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '474 patent, including, for example, claim 1 of the '474 patent. The special features include, for example, the method recited in claim 1, including all the intermediary steps. The special features constitute a material part of the invention of one or more of the claims of the '474 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

109. Defendant ASSA ABLOY AB's subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., are alter egos of ASSA ABLOY AB, and ASSA ABLOY AB is therefore responsible and liable for any activities performed by its subsidiaries on ASSA ABLOY AB behalf in offering for sale, testing, selling, and/or importing the Accused Products in or into the United States and instructing or training end users to use the Accused Products in the United States. ASSA ABLOY AB directs and completely and/or effectively controls the conduct of its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA

ABLOY Global Solutions, Inc. ASSA ABLOY AB controls the internal business operations, workings, and affairs of its subsidiaries and related companies. ASSA ABLOY AB and its subsidiaries do not observe and enforce corporate formalities and share common executive level leadership. The relationship between ASSA ABLOY AB and its subsidiaries, parents, and related entities is a sham at least because ASSA ABLOY AB directs and controls all external and internal activities of its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., and all key United States-market strategy, implementation, and sales decisions are made solely by ASSA ABLOY AB and its direct employees.

110. ASSA ABLOY AB is also liable for the actions of its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., as to the use, sale, offer for sale, testing, or import in or into the United States of the Accused Products under agency theory and/or because its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., function as mere agents of ASSA ABLOY AB as to the Accused Products. Any and all activities taken by ASSA ABLOY AB's subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., relating to the use, sale, offer for sale, or import in or into the United States of the Accused Products are and/or were instigated and directed by ASSA ABLOY AB, and are therefore attributable to ASSA ABLOY AB.

111. Based upon public information, ASSA ABLOY AB has intentionally induced and continues to induce infringement of one or more patent claims in this district and elsewhere in the United States by its intentional acts which have successfully, among other things, encouraged,

instructed, enabled, and otherwise cause third parties including, but not limited to, its subsidiaries, customers, and end users including to offer for sale, sell, import into the United States, and/or use the Accused Products in an infringing manner. To the extent that ASSA ABLOY AB is not the only direct infringer, it instructs its subsidiaries, customers, and end users on how to infringe the through its support and sales to them. ASSA ABLOY AB has entered into agreements with its subsidiaries stating its intent and desire that those subsidiaries use, sell, offer to sale, train or instruct customers and/or end users to use, and/or import the Accused Products in and/or into the United States.

112. Defendants had knowledge of the ’474 patent at least as of December 1, 2022, when Defendants’ counsel sent Plaintiff’s counsel a letter on behalf of Defendants demanding a license to Liberty Access’s patents, but as early as August of 2022, when one of Defendants’ alleged customers was accused of infringing the ‘474 patent.

113. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff’s patent rights.

114. Defendants’ actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

115. Since at least December 1, 2022, and as early as August of 2022, Defendants’ direct and indirect infringement of one or more claims of the ’474 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff’s rights under the patent.

116. Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Plaintiff in an amount that

compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

117. Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Plaintiff has and will continue to suffer this harm by virtue of Defendants' infringement of one or more claims of the '474 patent. Defendants' actions have interfered with and will continue to interfere with Plaintiff's ability to license technology. The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology. The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

118. Plaintiff hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

119. WHEREFORE, Liberty Access requests that the Court find in its favor and against Defendants, and that the Court grant Liberty Access the following relief:

a. Judgment that one or more claims of the Asserted Patents have been infringed, either literally or under the doctrine of equivalents, by Defendants or all others acting in concert therewith;

b. A permanent injunction enjoining Defendants and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the claims of the Asserted Patents, and; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents, and by such entities;

c. Judgment that Defendants account for and pay to Liberty Access all damages to and costs incurred by Liberty Access because of Defendants' infringing activities and other conduct complained of herein;

d. Judgment that Defendants' infringement of the Asserted Patents be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. An adjudication that ASSA ABLOY AB is liable for the action of certain of its subsidiaries, including ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., because they are the alter ego of ASSA ABLOY AB.

f. An adjudication that ASSA ABLOY AB is liable for the action of certain of its subsidiaries, including ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., because they are agents of ASSA ABLOY AB.

g. Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

h. That this Court declare this an exceptional case and award Liberty Access its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

i. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: April 28, 2023

Respectfully submitted,

By: */s/ Jonathan L. Hardt*

C. Matthew Rozier (CO 46854) *
**ROZIER HARDT MCDONOUGH PLLC**
2590 Walnut Street, Suite 10
Denver, Colorado 80205
Telephone: (720) 820-3006
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088) *
Jonathan R. Miller (GA507179) *
Travis E. Lynch (GA 162373) *
**ROZIER HARDT MCDONOUGH PLLC**
3621 Vinings Slope, Suite 4300
Atlanta, Georgia 30339
Telephone (470) 480-9505, -9517, -9514
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com
Email: lynch@rhmtrial.com

**Attorneys for Plaintiff *LIBERTY ACCESS TECHNOLOGIES LICENSING LLC***

*Admitted to the Eastern District of Texas

**List Of Exhibit Links***

A. ASSA ABLOY AB's 2022 Annual Report (available at https://www.assaabloy.com/group/en/investors/reports-presentations/annual-reports/2022)

B. Hospitality Net, ASSA ABLOY Article: "Delta Hotels by Marriott Dallas Allen Benefits from Seamless Implementation of Signature RFID Door Locks and Superior Customer Service by ASSA ABLOY Global Solutions" (available at https://www.hospitalitynet.org/news/4093036.html).

C. ASSA ABLOY Mobile Access Solutions Brochure (available for download at https://www.assaabloyglobalsolutions.com/hospitality/documents/Mobile-Access-Solutions-Brochure-EN.pdf)

D. ASSA ABLOY Hospitality Brochure (Americas) (available for download at https://www.assaabloyglobalsolutions.com/downloadables/Industry-brochures/hospitality/regional-hotel-brochures/am-brochures/Hospitality_Brochure_AMERICAS_English.pdf)

E. ASSA ABLOY 2023 Buyers Guide (Mobile Key) (available for download at https://info.assaabloyglobalsolutions.com/free-buyers-guide-mobile-key-and-keyless-check-in)

F. FCC User Manual for VingCard Classic RFID (available at https://fccid.io/Y7V-LCU6351C1/User-Manual/User-Manual-4012647).

G. FCC User Manual for ASSA ABLOY Zigbee Endnode (Draft - Online Option) (available at https://fccid.io/Y7V-683081150C1/Users-Manual/Users-Manual-3402004)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 28th day of April, 2023, I caused to be electronically-filed the foregoing document with the Clerk of Court using the Court's CM/ECF system. As such, this document was served on all counsel who are deemed to have consented to electronic service.

By: */s/ Jonathan L. Hardt*
Jonathan L. Hardt