**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **LIBERTY ACCESS TECHNOLOGIES LICENSING LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**ASSA ABLOY AB, ASSA ABLOY MOBILE SERVICES AB, AND ASSA ABLOY GLOBAL SOLUTIONS AB,**<br><br>Defendants. | Civil Action No. 2:22-cv-00507-JRG<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' ANSWER TO PLAINTIFF'S AMENDED COMPLAINT AND DEFENDANTS' AFFIRMATIVE DEFENSES**

Defendants ASSA ABLOY AB ("AA AB"), ASSA ABLOY Mobile Services AB ("AAMS AB"),[1] and ASSA ABLOY Global Solutions AB ("AAGS AB") (collectively, "ASSA ABLOY"), by their attorneys, hereby answer the First Amended Complaint, Dkt. 15, of Plaintiff Liberty Access Technologies Licensing LLC ("Liberty" or "Plaintiff") as follows:

## GENERAL DENIAL

Pursuant to Fed. R. Civ. P. 8(b)(3), any allegations in Liberty Access's First Amended Complaint (Dkt. 15) that are not specifically admitted below are hereby denied.

[1] AAMS AB has been defunct since December 15, 2021, and no longer exists. Dkt. 20 at 2. Nevertheless, to comply with Fed. R. Civ. P. 12(a)(1)(A), AA AB submits this response on behalf of AAMS AB.

## NATURE OF THE ACTION

1. **This is a patent infringement action to stop Defendants' infringement of the United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), respectively:**

| | U.S. Patent No. | Title | |
|---|---|---|---|
| A. | 9,373,205 | Access Control System And Method For Use By An Access Device | https://patentcenter.uspto.gov/applications/14603434<br><br>https://patents.google.com/patent/US9373205B2/en?oq=9%2c373%2c205 |
| B. | 10,657,747 | Access Control System And Method For Use By An Access Device | https://patentcenter.uspto.gov/applications/16034278<br><br>https://patents.google.com/patent/US10657747B2/en?oq=10%2c657%2c747 |
| C. | 11,373,474 | Access Control System And Method For Use By An Access Device | https://patentcenter.uspto.gov/applications/17646837<br><br>https://patents.google.com/patent/US11373474B2/en?oq=11%2c373%2c474 |

**Answer:** ASSA ABLOY denies the allegations of patent infringement in Paragraph 1 of Liberty's First Amended Complaint. ASSA ABLOY admits that copies of the Asserted Patents, on their face, are entitled "Access Control System And Method For Use By An Access Device." ASSA ABLOY is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1.

2. **Liberty Access seeks injunctive relief and monetary damages.**

**Answer:** ASSA ABLOY acknowledges the relief that Liberty seeks, but denies that Liberty is entitled to this, or any, relief.

## THE PARTIES

3. **Liberty Access is a limited liability company organized under the laws of the State of Texas, with a place of business at 815 Brazos Street, Suite 500, Austin, Texas 78701 (Travis County).**

**Answer:** On information and belief, ASSA ABLOY acknowledges Plaintiff Liberty Access Technologies Licensing LLC is a limited liability company organized and existing under the laws of Texas, and having a principal place of business at 815 Brazos Street, Suite 500, Austin, Texas 78701 (Travis County).

4. **Liberty Access is the exclusive licensee of the Asserted Patents with all rights to recover for all past, present, and future infringement, including past damages.**

**Answer:** ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4, and thus denies the same.

5. **Defendant ASSA ABLOY AB is a private limited company organized under the laws of Sweden with its primary place of business located at Klarabergsviadukten 90 SE-111 64 Stockholm, Sweden.**

**Answer:** ASSA ABLOY AB admits that it is a Swedish corporation with a place of business at Klarabergsviadukten 90 SE-111 64 Stockholm, Sweden.

6. **Defendant ASSA ABLOY Mobile Services AB ("ASSA ABLOY Mobile Services") is a private limited company organized under the laws of Sweden with its primary place of business located at Förmansvägen 11, SE-117 43 Stockholm, Sweden.**

**Answer:** ASSA ABLOY denies ASSA ABLOY Mobile Services AB is a Swedish corporation with a place of business at Förmansvägen 11, SE-117 43 Stockholm, Sweden.

7. **Defendant ASSA ABLOY Global Solutions AB ("ASSA ABLOY Global Solutions") is a private limited company organized under the laws of Sweden with its primary place of business located at Förmansvägen 11, SE-117 43 Stockholm, Sweden.**

**Answer:** ASSA ABLOY Global Solutions AB admits that it is a Swedish corporation with a place of business at Förmansvägen 11, SE-117 43 Stockholm, Sweden.

**ADDITIONAL RELEVANT FACTS ABOUT ASSA ABLOY AB**

**8. ASSA ABLOY AB is the ultimate parent company of ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and numerous other subsidiaries through which it uses, sells, and provides its products, solutions, and services.**

**See, e.g., Dkt. No. 13, at 1 ("ASSA ABLOY AB is the immediate parent company of, and 100% owner of ASSA ABLOY GLOBAL SOLUTIONS AB. No other publicly held corporation owns 10% or more of ABLOY GLOBAL SOLUTIONS AB."). .**

**Answer:** ASSA ABLOY AB admits it is the immediate parent company of and 100% owner of ASSA ABLOY GLOBAL SOLUTIONS AB and that no other publicly held corporation owns 10% or more of ASSA ABLOY GLOBAL SOLUTIONS AB. ASSA ABLOY AB denies it is the ultimate parent company of ASSA ABLOY Mobile Services. The remaining allegations of Paragraph 8 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis.

**9. ASSA ABLOY AB has, in filings in United States courts, held itself out as the party ultimately responsible for its and its subsidiaries' business activities in the United States.**

**See, e.g., Complaint, ASSA ABLOY AB v. CPC Patent Techs. Pty. Ltd., 3:22-cv-00694 (D. Conn. May 23, 2022).**

**Answer:** The allegations in Paragraph 9 are legal conclusions, which require no response. To the extent a response is required, the remaining allegations of Paragraph 9 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis.

**10. ASSA ABLOY AB also regularly enforces its United States patents in United States courts against companies it considers to be its competitors in the United States market.**

**See, e.g., Complaint, HID Global Corp. v. Wavelynx Techs. Corp., 1:22-cv-00362-UNA (D. Del. March 21, 2022); Complaint, ASSA ABLOY AB v. Spectrum Brands, Inc., 8:15-cv-00775 (C.D. Cal. May 18, 2015).**

**Answer:** The allegations in Paragraph 10 are legal conclusions, which require no response. To the extent a response is required, the remaining allegations of Paragraph 10 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis.

**11. ASSA ABLOY AB also reports and profits from the consolidated financial earnings of all its subsidiaries. See 2022 Annual Report, at p. 76. ("The [2022] Annual Report of ASSA ABLOY AB (publ.), corporate identity number 556059-3575, contains the consolidated financial statements for the fiscal year 1 January through 31 December 2022, including the nature and focus of the business.") ("2022 Annual Report").**

**ASSA ABLOY AB's 2022 Annual Report is available, at https://www.assaabloy.com/group/en/investors/reports-presentations/annual-reports/2022.**

**Answer:** ASSA ABLOY admits that AA AB's 2022 Annual Report is available at the cited website link, but responds that the report speaks for itself. The remaining allegations of Paragraph 11 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis.

**12. ASSA ABLOY AB owns 100% of the stock of its subsidiaries.**

**See, e.g., id. at p. 87.**

**Answer:** The allegations in Paragraph 12 are legal conclusions, which require no response. To the extent a response is required, the remaining allegations of Paragraph 12 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis.

**13. ASSA ABLOY AB and its subsidiaries share the same board of directors. "The Board of Directors holds ultimate responsibility for effective internal control and has therefore established fundamental documents of significance for financial reporting."**

**See id., at p. 63.**

**Answer:** ASSA ABLOY responds that AA AB's 2022 Annual Report speaks for itself. ASSA ABLOY denies the allegations of Paragraph 13. The allegations in Paragraph 13 are also vague and unclear, and therefore ASSA ABLOY denies them on at least that basis.

**14. Moreover, the Defendants have held out to the public that "ASSA ABLOY AB, is responsible for Group management and provides Group-wide functions. The Parent company's revenue consists of intra-Group franchise and royalty revenues." 2022 Annual Report, at p. 78.**

**Answer:** ASSA ABLOY responds that AA AB's 2022 Annual Report speaks for itself. The remaining allegations of Paragraph 14 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis.

**15. Defendants have also held out to the public that "[o]ur strategic activities are shared across our divisions to enable and accelerate growth." 2022 Annual Report, at p. 17.**

**Answer:** ASSA ABLOY responds that AA AB's 2022 Annual Report speaks for itself. The remaining allegations of Paragraph 15 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis.

**16. On December 1, 2022, ASSA ABLOY AB, through its outside counsel, directed a letter to Liberty Access demanding a license to Liberty Access's patents. That letter discussed "[ASSA ABLOY AB]'s award-winning mobile access technology."**

**Answer:** ASSA ABLOY admits its outside counsel sent a letter to Liberty Access's counsel on December 1, 2022. ASSA ABLOY admits the letter discusses "AAAB's award-winning mobile access technology." ASSA ABLOY specifically denies that its letter demanded a license to Liberty Access's patents. The remaining allegations of Paragraph 16 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis.

**ADDITIONAL RELEVANT FACTS ABOUT ASSA ABLOY AB SUBSIDIARIES**

**17. Upon information and belief, ASSA ABLOY Global Solutions AB is, among other things, "responsible for the processing of [user's] personal data" collected through use and provision of the Accused Products.**

**See https://www.assaabloyglobalsolutions.com/en/privacy-center/privacy-notice.**

**Answer:** ASSA ABLOY admits that the cited website is labeled with the name "ASSA ABLOY Global Solutions," but responds that the website speaks for itself. The remaining allegations of Paragraph 17 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent that the remaining allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17 and thus denies the same. ASSA ABLOY also denies the allegations of Paragraph 17 to the extent they use terms of the Asserted Patents, and thus constitute legal conclusions.

18. **Upon information and belief, ASSA ABLOY Global Solutions AB collects and stores personal data from users, including, but not limited to when users "provide [their] consent and use [ASSA ABLOY's] mobile access applications."** ***Id.*** **In particular, ASSA ABLOY Global Solutions AB "will collect [a user's] email address, property reservation information, and account information, electronic key, including username and password."** ***Id.***

**Answer:** The allegations of Paragraph 18 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the remaining allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18 and thus denies the same. ASSA ABLOY also denies the allegations of Paragraph 18 to the extent they use terms of the Asserted Patents, and thus constitute legal conclusions.

19. **Upon information and belief, ASSA ABLOY Global Solutions AB collects and uses this information for strategic business purposes, including but not limited to, inviting customers to register for ASSA ABLOY's services and inviting "end-users to create a mobile key."** ***Id.***

**Answer:** The allegations of Paragraph 19 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the remaining allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 and thus denies the same.

**20. ASSA ABLOY Global Solutions, Inc. is a wholly owned subsidiary of ASSA ABLOY AB. The vast majority of ASSA ABLOY Global Solutions, Inc.'s highest ranking officers and directors are or were located in Sweden, where ASSA ABLOY AB is located. This is evidenced by ASSA ABLOY Global Solutions, Inc.'s Texas Public Information Report:**

## Public Information Report

**Public Information Report**
**ASSA ABLOY GLOBAL SOLUTIONS, INC.**
Report Year :2021

Information on this site is obtained from the most recent Public Information Report (PIR) processed by the Secretary of State (SOS). PIRs filed with annual franchise tax reports are forwarded to the SOS. After processing, the SOS sends the Comptroller an electronic copy of the information, which is displayed on this web site. The information will be updated as changes are received from the SOS.

You may order a copy of a Public Information Report from open.records@cpa.texas.gov or Comptroller of Public Accounts, Open Records Section, PO Box 13528, Austin, Texas 78711.

| Title | Name and Address |
|---|---|
| DIRECTOR | **CATHARINA TUNBERG**<br>FRMANSVGEN 11 STOCKHOLM, NA SE-117 43 |
| OTHER | **CATHARINA TUNBERG**<br>FRMANSVGEN 11 STOCKHOLM, NA SE-117 43 |
| V.P. | **CHRISTOPHE SUT**<br>ARSTAANGSVAGEN 9 STOCKHOLM, NA SE-117 43 |
| DIRECTOR | **CHRISTOPHE SUT**<br>ARSTAANGSVAGEN 9 STOCKHOLM, NA SE-117 43 |
| V.P. | **MARKUS BOBERG**<br>ARSTAANGSVAGEN 9 STOCKHOLM, NA SE-117 43 |
| DIRECTOR | **MARKUS BOBERG**<br>ARSTAANGSVAGEN 9 STOCKHOLM, NA SE-117 43 |
| PRESIDENT | **NICOLAS AZNAR**<br>AV GUIDO CALOI 1985-G19 SAO PAULO, NA 05802-140 |
| DIRECTOR | **NICOLAS AZNAR**<br>AV GUIDO CALOI 1985-G19 SAO PAULO, NA 05802-140 |

**Answer:** ASSA ABLOY denies the allegations of Paragraph 20. The remaining allegations of Paragraph 20 are also vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the remaining allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20 and thus denies the same.

## JURISDICTION AND VENUE

**21. Liberty Access repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.**

**Answer:** ASSA ABLOY incorporates by reference as if fully set forth herein its Answers to the Paragraphs of Liberty's First Amended Complaint above.

**22. This is an action for infringement of the Asserted Patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. §§ 1331 and 1338(a).**

**Answer:** The allegations in Paragraph 22 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY admits that Liberty's First Amended Complaint raises a cause of action under the patent laws of the United States, Title 35 of the United States Code, in which case this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1338. ASSA ABLOY denies the remaining allegations of Paragraph 22 to the extent they constitute legal conclusions.

**23. Defendants are subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendants' substantial business in this judicial district, including: (i) At least a portion of the infringement alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.**

**Answer:** The allegations in Paragraph 23 are legal conclusions, which require no response. Moreover, ASSA ABLOY explicitly denies that it is subject to this Court's general personal jurisdiction. ASSA ABLOY explicitly denies that it is subject to this Court's specific jurisdiction. ASSA ABLOY denies any remaining allegations in Paragraph 23.

**24. Specifically, Defendants intend to do and do business in, have committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through its inducement of third parties, and offers their products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.**

**Answer:** The allegations of Paragraph 24 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the remaining allegations can be understood,

ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24 and thus denies the same. ASSA ABLOY specifically denies that it has committed acts of patent infringement or contributed to or induced acts of patent infringement by others in this judicial district, or anywhere else. The remaining allegations of Paragraph 24 also consist of legal conclusions requiring no response. To the extent a response is required, ASSA ABLOY denies the remaining allegations of Paragraph 24.

**25. Defendants also derive benefits from its presence in this district. With knowledge of the Asserted Patents, Defendants have furthermore encouraged retailers and customers to sell and use, respectively, the Accused Products throughout the United States.**




**Answer:** The allegations of Paragraph 25 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the remaining allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25 and thus denies the same. ASSA ABLOY denies that it has committed acts of patent infringement or contributed to or induced acts of patent infringement by others in this judicial district, or anywhere else. ASSA ABLOY also denies it had knowledge of the Asserted Patents. The remaining allegations of Paragraph 25 consist of legal conclusions

requiring no response. To the extent a response is required, ASSA ABLOY denies the remaining allegations of Paragraph 25.

**26. Defendants commit acts of infringement in this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products.**

**__Answer__:** The allegations in Paragraph 26 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 26. ASSA ABLOY specifically denies any act of infringement.

**27. Upon information and belief and based upon public information, Defendants have committed and continue to commit acts of infringement within this District, including, but not limited to, out of or on behalf of facilities located at 2001 E President George Bush Highway, Plano, TX 75074, and 777 Watters Creek Blvd, Allen, Texas 75013 (Collin County).**

**See, e.g., https://campaigns.assaabloyglobalsolutions.com/us-hotellocks.**

**See, e.g., https://www.hospitalitynet.org/news/4093036.html.**




**__Answer__:** The allegations in Paragraph 27 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 27. ASSA ABLOY specifically denies any act of infringement.

**28. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c), which provides that "a Defendant not resident in the United States may be sued in any judicial district."**

**Answer:** The allegations in Paragraph 28 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies venue is proper for this civil action.

**THE ACCUSED PRODUCTS**

**29. Liberty Access repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.**

**Answer:** ASSA ABLOY incorporates by reference as if fully set forth herein its Answers to the Paragraphs of Liberty's First Amended Complaint above.

**30. Based upon public information, Defendants own, operate, advertise, control, sell, import, and/or offer for sale, and instruct its subsidiaries, affiliates, and end users to use the hardware, software, and functionality that allows users to use their Mobile Access features as a key to a hotel room, through marketed products and services, including, but not limited to, the ASSA ABLOY Global Solutions Mobile Access Software Development Kit (SDK), the ASSA ABLOY Global Solutions Mobile Access App, ASSA ABLOY Mobile Services (including but not limited to ASSA ABLOY's Seos key credential technology), ASSA ABLOY's Visionline system, and ASSA ABLOY's VingCard Electronic Locks (including but not limited to the Novel, Essence, Signature RFID, Classic RFID, Allure, and Flex models), (collectively "Accused Products").**

**See, e.g., https://www.assaabloyglobalsolutions.com/en/hospitality-solutions#gw-group-cards-fccbe61fb0; and https://www.assaabloyglobalsolutions.com/downloadables/solution-brochures/mobile-access/Mobile%20Access%20Brochure%20English.pdf.**




**<u>Answer</u>:** The allegations of Paragraph 30 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 30 and thus denies the same. ASSA ABLOY also denies the allegations of Paragraph 30 to the extent they use terms of the Asserted Patents, and thus constitute legal conclusions.

**31. In marketing the Accused Products, the Defendants represent that "You can choose between three variants of the solution depending on your needs."**

**https://www.assaabloyglobalsolutions.com/hospitality/documents/Mobile-Access-Solutions-Brochure-EN.pdf.**

## Our Mobile Access options for hotels

You can choose between three variants of the solution depending on your needs.

### Customer Integration

This solution is created for hotels with their own app initiatives that want to integrate mobile access into their own apps and back end systems. ASSA ABLOY Global Solutions provides a Mobile Access Software Development kit (SDK) together with dedicated onboarding services to facilitate seamless integration.

### Third Party Certified Partner App

This solution suits hotels that want mobile app functionality beyond just access control, but don't yet have their own in-house app initiatives. They can here pick a solution from one of our selected app specialist partners, who through our Certified Partner Program already have integrated our mobile access functionality into their products.

### ASSA ABLOY Global Solutions Mobile Access App

This is our own ready-to-use, off-the-shelf solution. The app suits hotels that want to provide basic mobile access solutions to their guests in a simple to use format. There are no integrations or third-party dependencies required.

We publish a general app that is available in the App Store and on Google Play. Through an administration portal, hotels can customize their digital key graphics to reflect company branding or design. This will then show in a "Passbook" inspired style for the hotel to use.

### Unlock Your Door in a Second with Your iPhone or Apple Watch

With room key in Apple Wallet, guests can access their rooms, elevators, and common spaces like the gym and the pool using just their iPhone or Apple Watch. It's easy, convenient and private. Room key in Apple Wallet integrates into existing access control systems, is simple to distribute and manage, and takes advantage of the built-in security features of iPhone and Apple Watch.

**Answer:** ASSA ABLOY responds that the cited document speaks for itself. To the extent there are any additional allegations in Paragraph 31, ASSA ABLOY denies them.

**32. The Accused Products provide features, functionality, hardware, and software that, e.g., permit a hotel to enter a hotel room reservation for a user into a reservation system.**

**See https://youtu.be/YYvYMml-rj8.**


Mobile Access Made Easy 2020
ASSA ABLOY Global Solutions Mobile Access
Press Esc to exit full screen
Augusto Hotel
Reservations
Building status
New reservation
Room number
3609
Reference
booking
Check in
2020-07-06
Check out
2020-07-10
Add guests
New guest
Name
Jane Doe
Email
janedoe@mail.com
Common rooms
+ Add guest
Cancel
0:28 / 1:15
Scroll for details


The lock decrypts the mobile key and unlocks the door.
1
Guest confirms mobile booking and hotel server initializes check in.
6
The guest's smartphone receives the encrypted key in a secure key vault within the app. When presented to the lock, the access app transmits the encrypted key to the lock through a secure communication channel.
2
The hotel's property management system (PMS) allocates a room and requests Visionline to issue a key.
5
Visionline generates a digital key, and transfers it to the cloud-based ASSA ABLOY Mobile Services, for secure Over The Air delivery.
3
The cloud-based ASSA ABLOY Mobile services encrypts and securely delivers the mobile key to the assigned phone.
4

**Answer:** ASSA ABLOY responds that the cited YouTube video speaks for itself. The remaining allegations of Paragraph 32 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent that the remaining allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32 and thus denies the same. ASSA ABLOY also denies the allegations of Paragraph 32 to the extent they use terms of the Asserted Patents, and thus constitute legal conclusions.

**33. The Accused Products also generate reservation information based on the user's reservation and transmit that reservation information to an application on a portable device of the user. *Id.***







ASSA ABLOY Global Solutions Mobile Access
History of Jane Doe's stay
Guest checked in ✓ 10:05 (2020-07-06)
Key issued by front desk ✓ 10:05 (2020-07-06)
Key ready for delivery ✓ 10:05 (2020-07-06)
Key delivered to mobile device ✓ 10:06 (2020-07-06)
Key used at premises
Close
New reservation
Check out
Keys
2020-07-10
Hotel gets confirmation that
Mobile Key has been issued to Guest
0:51 / 1:15


The lock decrypts the mobile key and unlocks the door.
1
Guest confirms mobile booking and hotel server initializes check in.
6
The guest's smartphone receives the encrypted key in a secure key vault within the app. When presented to the lock, the access app transmits the encrypted key to the lock through a secure communication channel.
2
The hotel's property management system (PMS) allocates a room and requests Visionline to issue a key.
Visionline generates a digital key, and transfers it to the cloud-based ASSA ABLOY Mobile Services, for secure Over The Air delivery.
5
3
The cloud-based ASSA ABLOY Mobile services encrypts and securely delivers the mobile key to the assigned phone.
4




**<u>Answer</u>:** ASSA ABLOY admits that the cited YouTube video speaks for itself. The remaining allegations of Paragraph 33 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent that the remaining allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 33 and thus denies the same. ASSA ABLOY also denies the allegations of Paragraph 33 to the extent they use terms of the Asserted Patents, and thus constitute legal conclusions.

**34. The application on the portable device transmits a message to an access device of a door lock and the access device activates the door lock. *Id.***










After ensuring that the Bluetooth is enabled, the guest simply holds the smartphone to the door lock, waits for the solid green light and enters the room.

**<u>Answer</u>:** ASSA ABLOY admits that the cited YouTube video speaks for itself. The allegations of Paragraph 34 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent that the remaining allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 34 and thus denies the same. ASSA ABLOY also denies the allegations of Paragraph 34 to the extent they use terms of the Asserted Patents, and thus constitute legal conclusions.

**35. Upon information and belief, the Accused Products are configured in a manner that enables users (including but not limited to the Defendants' affiliates, customers, and/or end users) to infringe the Asserted Patents.**

**See, e.g., https://fccid.io/Y7V-683081150C1/Users-Manual/Users-Manual-3402004.**



*Figure 1: Example of online configuration. Several other configurations are possible; see Appendix C for some examples.*

**<u>Answer</u>:** ASSA ABLOY admits that the cited Manual speaks for itself. The remaining allegations of Paragraph 35 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent that the remaining allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of

Paragraph 35 and thus denies the same. ASSA ABLOY also specifically denies any act of infringement.

**36. Based upon public information, Defendants, directly and/or through its agents, intermediaries, customers, and/or employees use, advertise, provide, and/or educate third parties about the Accused Products.**

**Answer:** The allegations of Paragraph 36 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 36 and thus denies the same. ASSA ABLOY also denies the allegations of Paragraph 36 to the extent they constitute legal conclusions.

**37. For instance, Defendants encourage, instruct, enable or otherwise cause end users to upgrade Mobile Access features that infringe on the Asserted Patents.**

## Technical requirements

**Lock system**
The latest generation of VingCard's RFID locks Classic, Signature, Essence and Allure are all compatible with Mobile Access. The only thing needed is to add a small Bluetooth Low Energy board to the lock.




Classic RFID | Signature RFID | Essence | Allure

Even with older versions of lock systems it's possible to install Mobile Access. You can keep most of the lock hardware and just upgrade the reader electronics to the latest RFID version and add the Bluetooth Low Energy board.

**Software**
The latest version of Visionline is needed together with a Mobile Access license option.

It connects securely to the cloud-based ASSA ABLOY Global Solutions Mobile Access services.

**Answer:** The allegations of Paragraph 37 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 37 and thus denies the same. ASSA ABLOY also specifically denies any act of infringement.

**38. Moreover, using the ASSA ABLOY brand, Defendants ASSA ABLOY AB and ASSA ABLOY Global Solutions AB, advertise that their VingCard Classic RFID allows customers to "go contactless in a few short steps."**




**Answer:** ASSA ABLOY admits it advertises a product called "VingCard Classic." The remaining allegations of Paragraph 38 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis.

**39. Using the ASSA ABLOY brand, Defendants ASSA ABLOY AB and ASSA ABLOY Global Solutions AB, further advertise Visionline as a "patented wireless locking solution[ that] provides properties with the ability to manage both offline- or online-based locks, with online mode offered through Radio Frequency communication using the Zigbee high security open platform."**

**Notably, the technology underlying the VingCard Classic RFID (and other Accused Products and technologies with features that infringe the Asserted Patents) are registered under an FCC ID code associated with Defendant ASSA ABLOY Global Solutions AB's FCC Grantee code, Y7V. See https://fccid.io/Y7V-LCU6351C1. In fact, "ASSA ABLOY Global Solutions Norway AS" registered the VingCard RFID technology with the United States Federal Communications Commission.**

**https://www.assaabloyglobalsolutions.com/en/hospitality-solutions/access-management-systems-for-hotels.**




Visionline represents what it means to ensure a safe, yet seamless hotel environment by equipping properties with the industry's highest security standards.

A patented wireless locking solution, Visionline provides properties with the ability to manage both offline- or online-based locks, with online mode offered through Radio Frequency communication using the Zigbee high security open platform. An access management platform designed to address the diverse and unique needs of each hotel, Visionline also offers a range of security, efficiency and guest satisfaction enhancing features depending on the mode of implementation.

With Visionline, guest satisfaction and convenience come virtually guaranteed. When integrated with online door locks and should a guest wish to extend their stay or switch guestrooms, Visionline allows staff to make such updates without requiring guests to visit the front desk in order to be issued a new key.

**Answer:** ASSA ABLOY responds the cited website (https://www.assaabloyglobalsolutions.com/en/hospitality-solutions/access-management-systems-for-hotels) speaks for itself. The remaining allegations of Paragraph 39 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 39 and thus denies the same. ASSA ABLOY also specifically denies any act of infringement. ASSA ABLOY also denies the allegations of Paragraph 39 to the extent they constitute legal conclusions.

**40. Upon information and belief, the Accused Products—including but not limited to, for example, ASSA ABLOY's VingCard Classic RFID lock18 and Visionline platform—are configured and used to connect to users' mobile devices in a manner that enables users (including but not limited to the Defendants' affiliates, customers, and/or end users) to infringe the Asserted Patents.**

**See https://fccid.io/Y7V-LCU6351C1/User-Manual/User-Manual-4012647.pdf.**




**1. Introduction**

The *VingCard Classic RFID* lock is a standalone electronic lock with RFID (*radio frequency identification*) technology, which can also be online by ZigBee [1]. *VingCard Classic RFID* is compatible with the Visionline system. The lock has LED signals and can also be configured for sound signals [2]; see information about configuring the beeper in *section 1.1* below. ***Note:*** The *VingCard Classic RFID* lock can be used at new installations, or as an upgrade from *VingCard Classic mag;* in the latter case, only add the RFID reader by replacing the top cover.




**<u>Answer</u>:** The allegations of Paragraph 40 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 40 and thus denies the same. ASSA ABLOY also specifically denies any act of infringement. ASSA ABLOY also denies the allegations of Paragraph 40 to the extent they constitute legal conclusions.

> **41. Using the ASSA ABLOY brand, Defendants explain that ASSA ABLOY's VingCard Signature RFID lock has a "[r]eader with built-in BLE or mobile access board add-on," and ASSA ABLOY's VingCard Classic RFID lock has a "[r]eader with built-in BLE."**
>
> **See, e.g., https://www.assaabloyglobalsolutions.com/downloadables/product-sheets/electronic-locks/vingcard-signature/VingCard%20Signature%20RFID%20Product%20Sheet%20English.pdf**

**<u>Answer</u>:** ASSA ABLOY responds the cited website speaks for itself. The remaining allegations of Paragraph 41 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 41 and thus denies the same.

> **42. Upon information and belief, ASSA ABLOY's door locks, including but not limited to the Defendants' VingCard Classic RFID, are equipped with (at least) a ZigBee endnode, which enable online use of the Accused Products.**

**See, e.g., https://fccid.io/Y7V-LCU6351C1/User-Manual/User-Manual-4012647.pdf.**




**<u>Answer</u>:** ASSA ABLOY responds the cited website speaks for itself. The remaining allegations of Paragraph 42 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 42 and thus denies the same.

**43. Each of the Accused Products is manufactured by and imported and distributed in the United States and this judicial district by and/or at the direction and control and/or instigation of Defendants, who are responsible for the infringing activity identified in this FAC.**

**<u>Answer</u>:** The allegations of Paragraph 43 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 43 and thus denies the same. ASSA ABLOY also specifically denies any act of infringement. ASSA ABLOY also denies the allegations of Paragraph 43 to the extent they constitute legal conclusions.

**44. On information and belief, Defendants direct and completely and/or effectively control, and/or instigate, the conduct of its subsidiaries and affiliates, including, but not limited to, ASSA ABLOY Global Solutions, Inc. (“AAGS, Inc.”), to**

**design, develop, market, advertise, manufacture, package, brand, offer for sale, and sell the Accused Products in and into the United States.**

**Answer:** The allegations of Paragraph 44 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 44 and thus denies the same. ASSA ABLOY also denies the allegations of Paragraph 44 to the extent they constitute legal conclusions.

**45. Defendants exercise complete domination and control over their subsidiaries and affiliates, including, but not limited to, AAGS, Inc., and/or direct and completely and/or effectively control all external and internal workings of those subsidiaries and affiliates.**

**Answer:** The allegations of Paragraph 45 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 45 and thus denies the same. ASSA ABLOY also denies the allegations of Paragraph 45 to the extent they constitute legal conclusions.

**46. On information and belief no employee of AAGS, Inc. directs and controls the negotiation or execution of agreements with United States customers of the Accused Products, and to the extent any AAGS, Inc. employee is or was involved, such involvement is or was at the direction or control of one or more of the Defendants. Defendants' employees direct, control, manage, and execute the business dealings with U.S. customers and all activities associated with U.S. sales.**

**Answer:** The allegations of Paragraph 46 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 46 and thus denies the same. ASSA ABLOY also denies the allegations of Paragraph 46 to the extent they constitute legal conclusions.

**47. Upon information and belief and based on public information, Defendants provide and distribute instructions that guide users to use the Accused Products in an infringing manner, through their various services, including but not limited to ASSA ABLOY's Customer Support Desk, Customer Online Tool, ServiceNow (including but not limited to ASSA ABLOY's Live Chat, Service Catalog, Knowledge Base [which includes Self Help, Guides, Manuals, and Service News], and System Status), and Professional Services (including but not limited to Mobile Key Setup / Go Live Service, PMS Implementations, Server migrations, Database Rebuilds, Remote System, Upgrades, and Specialized Services).**

**See, e.g., at https://www.assaabloyglobalsolutions.com/downloadables/Industry-brochures/hospitality/regional-hotel-brochures/am-brochures/Hospitality_Brochure_AMERICAS_English.pdf.**

## Customer Support

Staffed with seasoned technical support representatives, our Support Desk is positioned to provide you with the efficient and effective technical telephone support 24 hours a day, 7 days a week, 365 days a year. Our team is dedicated to making sure you have the support you need to keep your business running at top efficiency.

**Contact us via our new online support tool by registering at:**

.com my.assaabloyglobalsolutions.com/assaabloy

For all other issues, encourage our customers to use our Customer Online Tool. ServiceNow provides users with the following abilities:

- **Live Chat** – Contact Support (available Mon-Fri, 7a-7p CST)
- **Service Catalog** – Open a case for technical support and request services (such as licenses, server migrations, etc.)
- **Knowledge Base** – Self Help, Guides, Manuals, and Service News
- **System Status** – planned service availability

**Email us to learn more about our customer support contracts and warranty:**

SupportContracts.nam.globalsolutions@assaabloy.com

## Professional Services

- Server migrations
- Database Rebuilds
- Remote System Upgrades
- Mobile Key Setup / Go Live Service
- PMS Implementations
- Specialized Services

**For critical issues, contact us by phone and speak with a technician:**

1-800-225-8464 | Option 2

Critical issues such as properties that are completely down or unable to make keys.

**Answer:** ASSA ABLOY responds the cited website speaks for itself. The remaining allegations of Paragraph 47 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 47 and thus denies the same. ASSA ABLOY also specifically denies any act of infringement. ASSA ABLOY also denies the allegations of Paragraph 47 to the extent they constitute legal conclusions.

**48. Upon information and belief and based on public information, through these services, Defendants provide and distribute instructions—including but not limited to user guides, manuals, trainings, service portals, and other instructions—that guide users to use the Accused Products in an infringing manner.**

**Answer:** The allegations of Paragraph 48 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 48 and thus denies the same. ASSA ABLOY also specifically denies any act of infringement. ASSA ABLOY also denies the allegations of Paragraph 48 to the extent they constitute legal conclusions.

**49. For example, upon information and belief and based on public information, Defendants own, operate, direct, and are responsible for the website https://my.assaabloyglobalsolutions.com/assaabloy. Upon information and belief and based on public information, through this website, Defendants provide and distribute instructions that guide users to use the Accused Products in an infringing manner.**

**See, e.g., https://my.assaabloyglobalsolutions.com/assaabloy?id=csm_index.**

**Answer:** ASSA ABLOY responds the cited websites speak for themselves. The allegations of Paragraph 49 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 49 and thus

denies the same. ASSA ABLOY also specifically denies any act of infringement. ASSA ABLOY also denies the allegations of Paragraph 49 to the extent they constitute legal conclusions.

**COUNT I: Infringement of U.S. Patent No. 9,373,205**

**50. Liberty Access repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.**

**Answer:** ASSA ABLOY incorporates by reference as if fully set forth herein its Answers to the Paragraphs of Liberty's First Amended Complaint above.

**51. The USPTO duly issued U.S. Patent No. 9,373,205 (the "'205 patent") on June 21, 2015, after full and fair examination of Application No 14/603,434, which was filed on January 23, 2015. See '205 patent, at p. 1. A Reexamination Certificate was issued on February 25, 2022, after supplemental examination of application No. 96/000,367. See id., at pp.18–21.**

**Answer:** ASSA ABLOY admits that a copy of the '205 patent obtained from the USPTO's website indicates that the '205 patent has an issue date of June 21, 2016 (but denies the '205 patent issued on June 21, 2015, as Liberty's Answer alleges) and is based on Application No. 14/603,434, which the copy of the patent indicates was filed on January 23, 2015. ASSA ABLOY further admits that records from the USPTO's website indicate that a Reexamination Certificate with a patent number of 9,373,205 and a supplemental examination request number of 96/000,367 includes a certificate issuance date of February 25, 2022. ASSA ABLOY is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 51, and therefore denies the same.

**52. Liberty Access is the exclusive licensee of the '205 patent with all substantial rights, and interest in and to the '205 patent, including the sole and exclusive right to prosecute this action and enforce the '205 patent against infringers, and to collect damages for all relevant times.**

**Answer:** ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 52 and thus denies the same.

**53. Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the ’205 patent.**

**Answer:** ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 53 and thus denies the same.

**54. The claims of the ’205 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that allow for secure access to control of a door lock based on information contained in a current reservation certificate.**

**Answer:** The allegations in Paragraph 54 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 54.

**55. The written description of the ’205 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art priority date. The ’205 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.**

**Answer:** The allegations in Paragraph 55 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 55.

**56. Defendants have infringed one or more claims of the ’205 patent by using, providing, supplying, or distributing the Accused Products.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the ’205 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. ASSA ABLOY denies any remaining allegations in Paragraph 56.

**57. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 5 of the ’205 patent.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed claim 5 (or any other claim) of the ’205 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. ASSA ABLOY denies any remaining allegations in Paragraph 57.

**58. For example, the Accused Products provide an access device for use in an access control system, the access device comprising: a processor having control of a door lock; and a communication module connected to the processor, the processor is configured to receive a reservation certificate presented by a portable terminal through the communication module; wherein, when a current reservation certificate that comprises an interval of a reservation is presented by the portable terminal, the processor is configured to compare the interval of the reservation of the current reservation certificate to a current time accessible to the processor, determine the current time is within the interval of the reservation, and activate the door lock to allow the portable terminal to unlock the door lock during the interval of the reservation, as recited in claim 5.**

**Answer:** ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 58 and thus denies the same. ASSA ABLOY also specifically denies any act of infringement. ASSA ABLOY also denies the allegations of Paragraph 58 to the extent they use terms of the Asserted Patents, and thus constitute legal conclusions.

**59. The processor of the Accused Products also has access to the current time, the reservation certificate comprises data representative of an interval of the reservation, and the processor activates the door lock during the interval, as recited in claim 5**.

**Answer:** ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 59 and thus denies the same. ASSA ABLOY also specifically denies any act of infringement. ASSA ABLOY also denies the allegations of Paragraph 59 to the extent they use terms of the Asserted Patents, and thus constitute legal conclusions.

**60. For example, ASSA ABLOY’s Mobile Access App and/or Mobile Access Services (including but not limited to ASSA ABLOY’s Seos technology, SDK,**

**and/or Visionline platform), has access to the current time, the reservation certificate comprises data representative of an interval of the reservation, and the processor activates the door lock during the interval, as recited in claim 5.**

**https://www.youtube.com/watch?v=hM5enp7vvcM.**







**<u>Answer</u>:** ASSA ABLOY responds that the cited YouTube video speaks for itself. ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the '205 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. ASSA ABLOY also denies the allegations of Paragraph 60 to the extent they use terms of the Asserted Patents, and thus constitute legal conclusions.

**61. Liberty Access incorporates by reference, as if they were set forth fully herein, its preliminary infringement contentions for the '205 patent, due and dated no later than May 16, 2023, which show that the infringement allegations of Liberty Access are plausible.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the '205 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in Paragraph 61 contain legal conclusions, which require no response. ASSA ABLOY denies any remaining allegations in Paragraph 61.

**62. Since at least December 1, 2022, and as early as August of 2022, Defendants have also indirectly infringed and continue to indirectly infringe one or more claims of the '205 patent by inducing others to directly infringe one or more claims of the '205 patent. Defendants have induced and continue to induce their subsidiaries, parents, partners, affiliates, employees, and end-users, including, but not limited to, AAGS, Inc. and Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '205 patent by using the Accused Products. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '205 patent, including, for example, claim 5 of the '205 patent. Such steps by Defendants included, among other things, advising or directing personnel, subsidiaries, affiliates, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendants are performing these steps, which constitutes induced infringement with the knowledge of the '205 patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '205 patent. Defendants' inducement is ongoing.**

**Answer:** The allegations of Paragraph 62 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 62 and thus denies the same. ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the '205 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in

Paragraph 62 also contain legal conclusions, which require no response. ASSA ABLOY denies any remaining allegations in Paragraph 62.

**63. To the extent that Defendants are not the only direct infringer of the '205 patent, they instruct their subsidiaries and affiliates including, but not limited to, AAGS, Inc., and customers on how to infringe the '205 patent through their support and sales to them.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the '205 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in Paragraph 63 contain legal conclusions, which require no response. ASSA ABLOY denies any remaining allegations in Paragraph 63.

**64. Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the '205 patent. Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the '205 patent by personnel, contractors, subsidiaries, affiliates, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '205 patent including, but not limited to, provided access to coding, software, or functionalities that allow customers and end users to incorporate functionality from Defendants' applications into those customers' and end users' proprietary brand applications or websites. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '205 patent, including, for example, claim 5 of the '205 patent. The special features include, for example, the method recited in claim 5, including all the intermediary steps. The special features constitute a material part of the invention of one or more of the claims of the '205 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the '205 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in Paragraph 64 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 64.

**65. Defendant ASSA ABLOY AB's subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., are alter egos of ASSA ABLOY AB, and ASSA ABLOY AB is therefore responsible and liable for any activities performed by its subsidiaries on ASSA ABLOY AB's behalf in offering for sale, testing, selling, and/or importing the Accused Products in or into the United States and instructing or training end users to use the Accused Products in the United States. ASSA ABLOY AB directs and completely and/or effectively controls the conduct of its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc. ASSA ABLOY AB controls the internal business operations, workings, and affairs of its subsidiaries and related companies. ASSA ABLOY AB and its subsidiaries do not observe and enforce corporate formalities and share common executive level leadership. The relationship between ASSA ABLOY AB and its subsidiaries, parents, and related entities is a sham at least because ASSA ABLOY AB directs and controls all external and internal activities of its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., and all key United States-market strategy, implementation, and sales decisions are made solely by ASSA ABLOY AB and its direct employees.**

**Answer:** The allegations in Paragraph 65 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 65.

**66. ASSA ABLOY AB is also liable for the actions of its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., as to the use, sale, offer for sale, testing, or import in or into the United States of the Accused Products under agency theory and/or because its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., function as mere agents of ASSA ABLOY AB as to the Accused Products. Any and all activities taken by ASSA ABLOY AB's subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., relating to the use, sale, offer for sale, or import in or into the United States of the Accused Products are and/or were instigated and directed by ASSA ABLOY AB, and are therefore attributable to ASSA ABLOY AB.**

**Answer:** The allegations in Paragraph 66 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 66.

**67. Based upon public information, ASSA ABLOY AB has intentionally induced and continues to induce infringement of one or more patent claims in this district and elsewhere in the United States by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise**

> **cause third parties including, but not limited to, its subsidiaries, customers, and end users including to offer for sale, sell, import into the United States, and/or use the Accused Products in an infringing manner. To the extent that ASSA ABLOY AB is not the only direct infringer, it instructs its subsidiaries, customers, and end users on how to infringe the Accused Products through its support and sales to them. ASSA ABLOY AB has entered into agreements with its subsidiaries stating its intent and desire that those subsidiaries use, sell, offer to sale, train or instruct customers and/or end users to use, and/or import the Accused Products in and/or into the United States.**

**See, e.g., https://campaigns.assaabloyglobalsolutions.com/us-hotellocks.**






**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of any patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in Paragraph 67 are also legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 67.

**68. Defendants had knowledge of the ’205 patent at least as of December 1, 2022, when Defendants’ counsel sent Plaintiff’s counsel a letter on behalf of Defendants demanding a license to Liberty Access’s patents, but as early as August of 2022, when one of Defendants’ alleged customers was accused of infringing the ‘205 patent.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the ’205 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in Paragraph 68 contain legal conclusions, which require no response. ASSA ABLOY denies any remaining allegations in Paragraph 68.

**69. On information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff’s patent rights).**

**Answer:** ASSA ABLOY denies the allegations in Paragraph 69. The allegations in Paragraph 69 are also legal conclusions, which require no response.

**70. Defendants’ actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.**

**Answer:** The allegations in Paragraph 70 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 70.

**71. Since at least December 1, 2022, and as early as August of 2022, Defendants’ direct and indirect infringement of one or more claims of the ’205 patent was, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff’s rights under the patent.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the ’205 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in Paragraph 71 contain legal conclusions, which require no response. ASSA ABLOY denies any remaining allegations in Paragraph 71.

**72. Plaintiff has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Plaintiff in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.**

**Answer:** The allegations of Paragraph 72 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 72. ASSA ABLOY also specifically denies any alleged infringement.

**73. Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Plaintiff has and will continue to suffer this harm by virtue of Defendants’ infringement of one or more claims of one or more claims of the ’205 patent. Defendants’ actions have interfered with and will continue to interfere with Plaintiff’s ability to license technology. The balance of hardships favors Plaintiff’s ability to commercialize its own ideas and technology. The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.**

**Answer:** The allegations in Paragraph 73 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 73. ASSA ABLOY also specifically denies any alleged infringement.

**COUNT II: Infringement of U.S. Patent No. 10,657,747**

**74. Liberty Access repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.**

**Answer:** ASSA ABLOY incorporates by reference as if fully set forth herein its Answers to the Paragraphs of Liberty’s First Amended Complaint above.

**75. The USPTO duly issued U.S. Patent No. 10,657,747 (the "'747 patent") on May 19, 2020, after full and fair examination of Application No. 16/034,278, which was filed on July 12, 2018. See '747 patent, at p. 1.**

**Answer:** ASSA ABLOY admits that a copy of the '747 patent obtained from the USPTO's website indicates that the '747 patent has an issue date of May 19, 2020, and is based on Application No. 16/034,278, which the copy of the patent indicates was filed on July 12, 2018. ASSA ABLOY is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 75, and therefore denies the same.

**76. Liberty Access is the exclusive licensee of the '747 patent with all substantial rights, and interest in and to the '747 patent, including the sole and exclusive right to prosecute this action and enforce the '747 patent against infringers, and to collect damages for all relevant times.**

**Answer:** ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 76 and thus denies the same.

**77. Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '747 patent.**

**Answer:** ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 77 and thus denies the same.

**78. The claims of the '747 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods for secure access to control of a door lock based on information contained in a reservation certificate.**

**Answer:** The allegations in Paragraph 78 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 78.

**79. The written description of the '747 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '747 patent also identifies and circumscribes all information necessary for a skilled**

**artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.**

**Answer:** The allegations in Paragraph 79 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 79.

**80. Defendants have infringed and continue to infringe one or more claims of the ’747 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the ’747 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. ASSA ABLOY denies any remaining allegations in Paragraph 80.

**81. Defendants have directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the ’747 patent.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed claim 1 (or any claim) of the ’747 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. ASSA ABLOY denies any remaining allegations in Paragraph 81.

**82. For example, the Accused Products, including but not limited to the Mobile Access products and services, including but not limited to ASSA ABLOY’s Mobile Access App, ASSA ABLOY’s Seos technology, SDK, and/or Visionline platform, and VingCard Signature RFID Electronic Lock, provide an access control system comprising an access device comprising a communication module connected to a processor having control of a door lock; a secure reservation interface to receive a reservation request from a first device for a reservation at a given destination, the reservation interface comprising one or more screens for receiving a selection of a location at the destination and an interval of the reservation; a reservation server, in communication with the reservation interface and a network, to receive the reservation request for the destination that includes a selected location at the destination and an interval of the reservation; issue a reservation certificate describing the interval of the reservation based on the reservation request and the selected location; and 3) transmit, via the network, from the reservation server to a second device distinct from the first device, the reservation certificate and a communication setting corresponding to the access device, d) an application installed on the second**

**device to receive the reservation certificate and the communication setting corresponding to the access device, wherein the application wirelessly transmits the reservation certificate to the access device using the communication setting upon receipt of a command to activate the door lock; and e) wherein the access device receives the reservation certificate from the application based on use by the application of the communication setting, and the processor activates the door lock based on at least the receipt of the reservation certificate.**




https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
ASSA ABLOY Hospitality
New reservation at City Center Hotel
Guest receives an email about reservation and possibility to use phone to open lock.
0:21 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
6
Share
Download
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
All
From ASSA ABLOY Global Sol...
Related
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views • 9 months ago
1:16
The Elsafe Sentinel


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
ASSA ABLOY
Hospitality Mobile Access
Guest downloads app and checks in.
0:31 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
6
Share
Download
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
All
From ASSA ABLOY Global Sol...
Related
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views • 9 months ago
1:16
The Elsafe Sentinel


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
Welcome!
Check-in is open
START CHECK IN
0:33 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
6
Share
Download
All
From ASSA ABLOY Global Sol...
Related
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views • 9 months ago
1:16
The Elsafe Sentinel


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
Check out
Room
2016-05-28
Delete
Edit
Add guest
E-mail
Estimated time of arrival
gustav.hagangen@assaabloy.com
15:00
Issue Key
Edit
Hotel clicks on issue key.
0:37 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
6
Share
Download
All
From ASSA ABLOY Global Sol...
Related
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views • 9 months ago
1:16
The Elsafe Sentinel


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
Issue Mobile Key
Room number: 101
Guest: Gustav Hagängen
Reference: ref12345
Common rooms: Gym Parking Swimming Pool VIP Lounge
Close
Issue Key
Delete
0:43 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
Share
Download
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
All
From ASSA ABLOY Global Sol...
Related
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views · 9 months ago
The Elsafe Sentinel


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
16:01
onsdag 25 maj
Mobile Access
Your key for reservation at City Center Hotel has been delivered
dra för att låsa upp
Guest receives key on the phone.
0:48 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
Share
Download
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
All
From ASSA ABLOY Global Sol...
Related
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views · 9 months ago
The Elsafe Sentinel







**<u>Answer</u>:** ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 82 and thus denies the same. ASSA ABLOY also specifically denies any act of infringement. ASSA ABLOY also denies the allegations of

Paragraph 82 to the extent they use terms of the Asserted Patents, and thus constitute legal conclusions.

**83. Liberty Access incorporates by reference, as if they were set forth fully herein, its preliminary infringement contentions for the ’747 patent, due and dated no later than May 16, 2023, which show that the infringement allegations of Liberty Access are plausible.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the ’747 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in Paragraph 83 contain legal conclusions, which require no response. ASSA ABLOY denies any remaining allegations in Paragraph 83.

**84. Since at least December 1, 2022, and as early as August of 2022, Defendants have also indirectly infringed and continues to indirectly infringe one or more claims of the ’747 patent by inducing others to directly infringe one or more claims of the ’747 patent. Defendants have induced and continues to induce its subsidiaries, parents, partners, affiliates, employees, and end-users, including its customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the ’747 patent by using the Accused Products. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the ’747 patent, including, for example, claim 1 of the ’747 patent. Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendants are performing these steps, which constitutes induced infringement with the knowledge of the ’747 patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the ’747 patent. Defendants’ inducement is ongoing.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the ’747 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations of Paragraph 84 also contain legal conclusions, which require no response. ASSA ABLOY denies any remaining allegations in Paragraph 84.

**85. To the extent that Defendants are not the only direct infringer of the ’747 patent, they instruct their subsidiaries and affiliates including, but not limited to, AAGS, Inc., and customers on how to infringe the ’747 patent through their support and sales to them.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the ’747 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in Paragraph 85 contain legal conclusions, which require no response. ASSA ABLOY denies any remaining allegations in Paragraph 85.

**86. Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the ’747 patent. Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the ’747 patent by personnel, contractors, subsidiaries, affiliates, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the ’747 patent including, but not limited to, provided access to coding, software, or functionalities that allow customers and end users to incorporate functionality from Defendants’ applications into those customers’ and end users’ proprietary brand applications or websites. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’747 patent, including, for example, claim 1 of the ’747 patent. The special features include, for example, the method recited in claim 1, including all the intermediary steps. The special features constitute a material part of the invention of one or more of the claims of the ’747 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants’ contributory infringement is ongoing.**

**Answer:** The allegations in Paragraph 86 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 86. ASSA ABLOY also specifically denies any alleged infringement.

**87. Defendant ASSA ABLOY AB’s subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., are alter egos of ASSA ABLOY AB, and ASSA ABLOY AB is therefore responsible and liable for any activities performed by its subsidiaries on ASSA ABLOY AB’s behalf in offering for sale, testing, selling, and/or importing the Accused Products in or into the United States and instructing or training end users to use the Accused Products in the United States. ASSA ABLOY AB directs and completely and/or effectively controls the conduct of its subsidiaries, including but not limited to ASSA ABLOY Mobile**

**Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc. ASSA ABLOY AB controls the internal business operations, workings, and affairs of its subsidiaries and related companies. ASSA ABLOY AB and its subsidiaries do not observe and enforce corporate formalities and share common executive level leadership. The relationship between ASSA ABLOY AB and its subsidiaries, parents, and related entities is a sham at least because ASSA ABLOY AB directs and controls all external and internal activities of its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., and all key United States-market strategy, implementation, and sales decisions are made solely by ASSA ABLOY AB and its direct employees.**

**Answer:** The allegations in Paragraph 87 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 87.

**88. ASSA ABLOY AB is also liable for the actions of its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., as to the use, sale, offer for sale, testing, or import in or into the United States of the Accused Products under agency theory and/or because its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., function as mere agents of ASSA ABLOY AB as to the Accused Products. Any and all activities taken by ASSA ABLOY AB's subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., relating to the use, sale, offer for sale, or import in or into the United States of the Accused Products are and/or were instigated and directed by ASSA ABLOY AB, and are therefore attributable to ASSA ABLOY AB.**

**Answer:** The allegations in Paragraph 88 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 88.

**89. Based upon public information, ASSA ABLOY AB has intentionally induced and continues to induce infringement of one or more patent claims in this district and elsewhere in the United States by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise cause third parties including, but not limited to, its subsidiaries, customers, and end users including to offer for sale, sell, import into the United States, and/or use the Accused Products in an infringing manner. To the extent that ASSA ABLOY AB is not the only direct infringer, it instructs its subsidiaries, customers, and end users on how to infringe the Accused Products through its support and sales to them. ASSA ABLOY AB has entered into agreements with its subsidiaries stating its intent and desire that those subsidiaries use, sell, offer to sale, train or instruct customers and/or end users to use, and/or import the Accused Products in and/or into the United States.**

**See, e.g., https://campaigns.assaabloyglobalsolutions.com/us-hotellocks.**

**__Answer__:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of any patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in Paragraph 89 are also legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 89.

**90. Defendants had knowledge of the ’747 patent at least as of December 1, 2022, when Defendants’ counsel sent Plaintiff’s counsel a letter on behalf of Defendants demanding a license to Liberty Access’s patents, but as early as August of 2022, when one of Defendants’ alleged customers was accused of infringing the ’747 patent.**

**__Answer__:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the ’747 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in Paragraph 90 contain legal conclusions, which require no response. ASSA ABLOY denies any remaining allegations in Paragraph 90.

**91. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff’s patent rights).**

**__Answer__:** ASSA ABLOY denies the allegations in Paragraph 91. The allegations in Paragraph 91 are also legal conclusions, which require no response.

**92. Defendants’ actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.**

**__Answer__:** The allegations in Paragraph 92 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 92.

**93. Since at least December 1, 2022, and as early as August of 2022, Defendants’ direct and indirect infringement of one or more claims of the ’747 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff’s rights under the patent.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the ’747 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in Paragraph 93 contain legal conclusions, which require no response. ASSA ABLOY denies any remaining allegations in Paragraph 93.

**94. Plaintiff has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Plaintiff in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.**

**Answer:** The allegations in Paragraph 94 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 94. ASSA ABLOY also specifically denies any alleged infringement.

**95. Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Plaintiff has and will continue to suffer this harm by virtue of Defendants’ infringement of one or more claims of one or more claims of the ’747 patent. Defendants’ actions have interfered with and will continue to interfere with Plaintiff’s ability to license technology. The balance of hardships favors Plaintiff’s ability to commercialize its own ideas and technology. The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.**

**Answer:** The allegations in Paragraph 95 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 95.

**COUNT III: Infringement of U.S. Patent No. 11,373,474**

**96. Liberty Access repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.**

**Answer:** ASSA ABLOY incorporates by reference as if fully set forth herein its Answers to the Paragraphs of Liberty’s First Amended Complaint above.

**97. The USPTO duly issued U.S. Patent No. 11,373,474 (the “’474 patent”) on June 28, 2022, after full and fair examination of Application No. 17/646,837, which was filed on January 3, 2022. See Ex. C, at C-1.**

**Answer:** ASSA ABLOY admits that a copy of the ’474 patent obtained from the USPTO’s website indicates that the ’474 patent has an issue date of June 28, 2022, and is based on Application No. 17/646,837, which the copy of the patent indicates was filed on January 3, 2022. ASSA ABLOY is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 97, and therefore denies the same.

**98. Liberty Access is the exclusive licensee of the ’474 patent with all substantial rights, and interest in and to the ’474 patent, including the sole and exclusive right to prosecute this action and enforce the ’474 patent against infringers, and to collect damages for all relevant times.**

**Answer:** ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 98 and thus denies the same.

**99. Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the ’474 patent.**

**Answer:** ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 99 and thus denies the same.

**100. The claims of the ’474 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods secure access to control of a door lock based on information contained in a reservation certificate.**

**Answer:** The allegations in Paragraph 100 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 100.

**101. The written description of the ’474 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The ’474 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.**

**Answer:** The allegations in Paragraph 101 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 101.

**102. Defendants have infringed and continue to infringe one or more claims of the '474 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the '474 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. ASSA ABLOY denies any remaining allegations in Paragraph 102.

**103. Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents at least claim 1 of the '474 patent.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed claim 1 (or any claim) of the '474 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. ASSA ABLOY denies any remaining allegations in Paragraph 103.

**104. For example, the Accused Products, including but not limited to ASSA ABLOY's ASSA ABLOY's Mobile Access App, Mobile Access Services (including but not limited to ASSA ABLOY's Seos technology, and SDK), Visionline platform, and VingCard Signature RFID Electronic Lock technology, provide an access control system comprising an access device comprising a communication module connected to a processor having control of a door lock, an application on a portable terminal and a server to provide a communication setting to the application, the communication setting corresponding to the access device, and to further provide to the application a reservation certificate comprising an interval of a reservation, wherein the application compares the interval of the reservation to a current time accessible to the application to determine if the reservation certificate is current and activates the door lock by communicating with the access device via the communication setting when the application determines that the reservation certificate is current.**


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
ASSA ABLOY
Hospitality Mobile Access
Guest downloads app and checks in.
0:31 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
6
Share
Download
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
All
From ASSA ABLOY Global Sol...
Related
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views • 9 months ago
1:16
The Elsafe Sentinel


https://www.youtube.com/watch?v=W4aOjMIMoH0
YouTube
Search
Welcome!
Check-in is open
City Center Hotel
25 - 28 maj
START CHECK IN
ADDRESS
CONTACT
WEBSITE
0:33 / 1:15
Mobile Access Made Easy
ASSA ABLOY Global Solution...
754 subscribers
Subscribe
6
Share
Download
2.2K views 2 years ago
With Mobile Access, provide your guests with an alternative to front desk check-in that allows them to maintain safe distances while reducing exposure to surfaces, using personal devices as a digital room access key.
Show more
All
From ASSA ABLOY Global Sol...
Related
VingCard Novel
ASSA ABLOY Global Solutions Official
1.4K views • 9 months ago
1:16
The Elsafe Sentinel







**__Answer__:** ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 104 and thus denies the same. ASSA ABLOY also denies

the allegations of Paragraph 104 to the extent they use terms of the Asserted Patents, and thus constitute legal conclusions. ASSA ABLOY also specifically denies any act of infringement.

**105. Liberty Access incorporates by reference, as if they were set forth fully herein, its preliminary infringement contentions for the ’474 patent, due and dated no later than May 16, 2023, which show that the infringement allegations of Liberty Access are plausible.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the ’474 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in Paragraph 105 contain legal conclusions, which require no response. ASSA ABLOY also specifically denies any act of infringement. ASSA ABLOY denies any remaining allegations in Paragraph 105.

**106. Since at least December 1, 2022, and as early as August of 2022, Defendants have also indirectly infringed and continue to indirectly infringe one or more claims of the ’474 patent by inducing others to directly infringe one or more claims of the ’474 patent. Defendants have induced and continue to induce their subsidiaries, parents, partners, affiliates, employees, and end-users, including, but not limited to, AAGS, Inc. and Defendants’ customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the ’474 patent by using the Accused Products. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the ’474 patent, including, for example, claim 1 of the ’474 patent. Such steps by Defendants included, among other things, advising or directing personnel, subsidiaries, affiliates, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendants are performing these steps, which constitutes induced infringement with the knowledge of the ’474 patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the ’474 patent. Defendants’ inducement is ongoing.**

**Answer:** The allegations of Paragraph 106 are vague and unclear, and therefore ASSA ABLOY denies them on at least that basis. To the extent the allegations can be understood, ASSA ABLOY lacks knowledge or information sufficient to form a belief as to the truth of the

allegations of Paragraph 106 and thus denies the same. ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the ’474 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in Paragraph 106 also contain legal conclusions, which require no response. ASSA ABLOY denies any remaining allegations in Paragraph 106.

> **107. To the extent that Defendants are not the only direct infringer of the ’474 patent, they instruct their subsidiaries and affiliates including, but not limited to, AAGS, Inc., and customers on how to infringe the ’474 patent through their support and sales to them.**

**<u>Answer</u>:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the ’474 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in Paragraph 107 contain legal conclusions, which require no response. ASSA ABLOY denies any remaining allegations in Paragraph 107.

> **108. Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the ’474 patent. Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the ’474 patent by personnel, contractors, subsidiaries, affiliates, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the ’474 patent including, but not limited to, provided access to coding, software, or functionalities that allow customers and end users to incorporate functionality from Defendants’ applications into those customers’ and end users’ proprietary brand applications or websites. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’474 patent, including, for example, claim 1 of the ’474 patent. The special features include, for example, the method recited in claim 1, including all the intermediary steps. The special features constitute a material part of the invention of one or more of the claims of the ’474 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants’ contributory infringement is ongoing.**

**<u>Answer</u>:** The allegations in Paragraph 108 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 108. ASSA ABLOY also specifically denies any act of infringement.

**109. Defendant ASSA ABLOY AB's subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., are alter egos of ASSA ABLOY AB, and ASSA ABLOY AB is therefore responsible and liable for any activities performed by its subsidiaries on ASSA ABLOY AB's behalf in offering for sale, testing, selling, and/or importing the Accused Products in or into the United States and instructing or training end users to use the Accused Products in the United States. ASSA ABLOY AB directs and completely and/or effectively controls the conduct of its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc. ASSA ABLOY AB controls the internal business operations, workings, and affairs of its subsidiaries and related companies. ASSA ABLOY AB and its subsidiaries do not observe and enforce corporate formalities and share common executive level leadership. The relationship between ASSA ABLOY AB and its subsidiaries, parents, and related entities is a sham at least because ASSA ABLOY AB directs and controls all external and internal activities of its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., and all key United States-market strategy, implementation, and sales decisions are made solely by ASSA ABLOY AB and its direct employees.**

**Answer:** The allegations in Paragraph 109 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 109.

**110. ASSA ABLOY AB is also liable for the actions of its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., as to the use, sale, offer for sale, testing, or import in or into the United States of the Accused Products under agency theory and/or because its subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., function as mere agents of ASSA ABLOY AB as to the Accused Products. Any and all activities taken by ASSA ABLOY AB's subsidiaries, including but not limited to ASSA ABLOY Mobile Services, ASSA ABLOY Global Solutions, and ASSA ABLOY Global Solutions, Inc., relating to the use, sale, offer for sale, or import in or into the United States of the Accused Products are and/or were instigated and directed by ASSA ABLOY AB, and are therefore attributable to ASSA ABLOY AB.**

**Answer:** The allegations in Paragraph 110 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 110.

**111. Based upon public information, ASSA ABLOY AB has intentionally induced and continues to induce infringement of one or more patent claims in this district and elsewhere in the United States by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise**

**cause third parties including, but not limited to, its subsidiaries, customers, and end users including to offer for sale, sell, import into the United States, and/or use the Accused Products in an infringing manner. To the extent that ASSA ABLOY AB is not the only direct infringer, it instructs its subsidiaries, customers, and end users on how to infringe the Accused Products through its support and sales to them. ASSA ABLOY AB has entered into agreements with its subsidiaries stating its intent and desire that those subsidiaries use, sell, offer to sale, train or instruct customers and/or end users to use, and/or import the Accused Products in and/or into the United States.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of any patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in Paragraph 111 are also legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 111.

**112. Defendants had knowledge of the '474 patent at least as of December 1, 2022, when Defendants' counsel sent Plaintiff's counsel a letter on behalf of Defendants demanding a license to Liberty Access's patents, but as early as August of 2022, when one of Defendants' alleged customers was accused of infringing the '474 patent.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the '474 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in Paragraph 112 contain legal conclusions, which require no response. ASSA ABLOY denies any remaining allegations in Paragraph 112.

**113. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights).**

**Answer:** ASSA ABLOY denies the allegations in Paragraph 113. The allegations in Paragraph 113 are also legal conclusions, which require no response.

**114. Defendants' actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.**

**Answer:** The allegations in Paragraph 114 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 114.

**115. Since at least December 1, 2022, and as early as August of 2022, Defendants' direct and indirect infringement of one or more claims of the '474 patent was, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.**

**Answer:** ASSA ABLOY specifically denies that it has directly or indirectly infringed any claim of the '474 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. The allegations in Paragraph 115 contain legal conclusions, which require no response. ASSA ABLOY denies any remaining allegations in Paragraph 115.

**116. Plaintiff has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Plaintiff in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.**

**Answer:** The allegations in Paragraph 116 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 116. ASSA ABLOY also specifically denies any alleged infringement.

**117. Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Plaintiff has and will continue to suffer this harm by virtue of Defendants' infringement of one or more claims of one or more claims of the '474 patent. Defendants' actions have interfered with and will continue to interfere with Plaintiff's ability to license technology. The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology. The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.**

**Answer:** The allegations in Paragraph 117 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 117.

## RESPONSE TO LIBERTY ACCESS' PRAYER FOR RELIEF

**118. Plaintiff hereby requests a trial by jury on all issues so triable by right.**

**Answer:** The allegations in Paragraph 118 are legal conclusions, which require no response. To the extent a response is required, ASSA ABLOY denies the allegations in Paragraph 118.

**RESPONSE TO LIBERTY ACCESS' PRAYER FOR RELIEF**

ASSA ABLOY denies the contents of Paragraph 119 including that ASSA ABLOY denies it has committed any act of infringement regarding the '205 Patent, the '747 Patent, and the '474 Patent (the "Asserted Patents"). Defendants specifically deny the allegations by Liberty of direct, induced, or contributory infringement of one or more claims of the Asserted Patents, either literally or under the doctrine of equivalents. Defendants deny that Liberty is entitled to any form of relief at all and denies that Liberty is entitled to the relief sought in the prayer for relief. Accordingly, the prayer by Liberty should be denied in its entirety with prejudice, and Liberty should take nothing.

**AFFIRMATIVE DEFENSES TO LIBERTY ACCESS' CLAIMS**

Without conceding that any of the following must necessarily be pleaded as an affirmative defense, or that any of the following is not already at issue by virtue of the forgoing denials, and without prejudice to ASSA ABLOY's rights to plead additional defenses as discovery into the facts of the matter warrant, ASSA ABLOY adopts and incorporates by reference, as if set forth herein, any affirmative defense asserted by any other defendant in this action to the extent that such affirmative defenses would be applicable to ASSA ABLOY, and ASSA ABLOY also asserts the following affirmative defenses:

**FIRST AFFIRMATIVE DEFENSE**
**(Noninfringement)**

Liberty is not entitled to any relief against ASSA ABLOY because ASSA ABLOY has not infringed, and is not infringing directly, indirectly, by induced or contributory infringement,

or in any way (either literally or under the doctrine of equivalents), any valid and enforceable claim of the any of the Asserted Patents.

**SECOND AFFIRMATIVE DEFENSE**
**(Invalidity)**

The claims of the Asserted Patents are invalid at least due to anticipation by or obviousness over the prior art, and because they are directed towards ineligible subject matter. To the extent the claimed products and/or systems are allegedly practiced by ASSA ABLOY, those claims are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112. ASSA ABLOY incorporates by reference its invalidity served on July 13, 2023, and any subsequent supplements thereto.

**THIRD AFFIRMATIVE DEFENSE**
**(Unenforceability of the Asserted Patents)**

Liberty and its agents intentionally withheld from the USPTO material information related to the alleged patentability of the asserted patents, rendering them unenforceable. *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) ("To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO."); *see also Intercontinental Great Brands LLC v. Kellogg N. Am. Co*., 869 F.3d 1336, 1342 (Fed. Cir. 2017) (applying the *Therasense* standard when the subject patent was undergoing reexamination).

The prosecution histories of the asserted patents show that Liberty, its affiliate, Urban Intel, Inc. (the apparent owner of the asserted patents), the alleged inventors (Chris Outwater and William Gibbens Redmann), and the prosecuting attorneys at Kasha Law LLC, John and Kelly Kasha, must have known about material prior art and withheld that art from the Patent Office, at

least during the reexamination of the ’205 patent filed by Urban Intel (Reexamination No. 96/000,367).

John Kasha and Kelly Kasha, who prosecuted the ’205 patent, as well as its alleged inventors, Chris Outwater and William Gibbens Redmann, intentionally and knowingly failed to disclose material information during the prosecution of the ’205 patent in violation of the duty of candor owed to the USPTO. Had any one of these individuals disclosed this information as required, the ’205 patent would not have survived reexamination.

On October 18, 2018, during prosecution of the application that would become the ’747 patent, Urban Intel, through its attorney Kelly Kasha, filed an information disclosure statement (IDS) that listed 40 prior art references, including U.S. Patent. Pub. Nos. 2009/0184801, 2010/0141381; and WO 2008/076074, which all name Olle Bliding as an inventor (collectively, the “Bliding References”). Ex. 1 at 82-88. The same IDS also disclosed a secondary reference, U.S. Patent Pub. No. 2010/0201536 to Robertson, et al. (“Robertson”, referred to collectively with the “Bliding References” as the “Bliding and Robertson References”), which similarly disclosed claimed features in the ’205 patent. *Id.* at 83. While Kelly Kasha signed the certification statement associated with the filing of these references, her knowledge of these references is also reasonably imputed to John Kasha, as they are the only attorneys listed on the website of their law firm (https://sites.google.com/a/kashalaw.com/www/home), both have participated extensively in the prosecution of the asserted patents, and both Kelly and John Kasha signed statements during the prosecution of the reissue application, from which the ’747 was a continuation. *See*, *e.g.*, Ex. 2 at 22-64 (Corrected Request for Supplemental Examination of U.S. Patent No. 9,373,205 signed by John Kasha), 98-100 (Request for Supplemental Examination Transmittal Form, signed by Kelly Kasha, with Part B Attachment).

The Bliding and Robertson References are material to all the claims of the asserted patents because they teach all of the elements of the '205 patent, from which the '747 and '474 patents are continuations, including both (1) the core limitations involving using a "reservation certificate" comprising ordinary information about the reservation to activate a door lock, and (2) the additional limitations directed towards comparing the interval of the reservation to the "reservation certificate" in determining whether to activate a door lock (the "temporal limitations"). *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d at 1288-92; *see, e.g.,* Bliding at p. 6, lines 1-6, 30-34 (explaining that "access defining data" may include "temporal data" and that matching data is a "requisite" for granting access); p. 12, lines 21-26 (explaining that "temporal data . . . defines one or more time frames during which access is permitted"); p. 18, lines 16-20 (explaining the interval during which a user may be allowed access through the lock device). Further emphasizing Bliding's materiality, combining the references, while permissible, is not even required because each reference, on its own, teaches the claimed elements of the '205 patent. *See Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1350, 1355 (Fed. Cir. 2017) (explaining that to prove materiality, withheld references can be analyzed both individually and in combination).

Yet, on August 4, 2021, when Urban Intel, through its attorneys, sought reexamination of the '205 patent almost three years after Kasha Law LLC submitted an IDS during prosecution of the '747 patent, Kelly **Kasha omitted both the Bliding and Robertson References**. Ex. 2 at 98-100 (Request for Supplemental Examination Transmittal Form, signed by Kelly Kasha, with a Part B attachment not listing any of the Bliding and Robertson References). Moreover, on December 13, 2021, purported inventors Mssrs. Outwater and Redmann participated in an interview with the examiner for the reexamination of the '205 patent and withheld the Bliding

References during the interview. *See* Ex. 2 at 231 (Examiner's Ex Parte Reexamination Interview Summary). Instead, Urban Intel, John Kasha, Kelly Kasha, and the inventors based the reexamination only on a narrower reference, U.S. Patent Pub. No. 2003/0208386 ("Bröndrup"), which does not disclose the temporal limitations that Urban Intel would add, through its attorneys, during the reexamination. Ex. 2 at 316-22 (Claim Amendments submitted on January 31, 2022 by John Kasha). Having kept the material Bliding and Robertson References from Patent Office scrutiny, Urban Intel secured its modified claims on February 25, 2022, *id.* at 340-41 (Ex Parte Reexamination Certificate), six months before Liberty asserted those claims against Marriott on August 18, 2022. Establishing a pattern of deception, Urban Intel also secured similar limitations in U.S. Patent No. 11,373,474 (the "'474 patent"), where on February 4, 2022, Kelly Kasha filed an IDS that also omitted the Bliding and Robertson References. Ex. 3 at 91-93. For reference, an excerpt of Liberty's patent portfolio family tree, with the currently asserted patents bolded, is shown below.




Kelly Kasha, John Kasha, Chris Outwater, and William Gibbens Redmann must have known about the material Bliding and Robertson References because they were included in the October 18, 2018 IDS filed during examination of the application that became the ’747 patent, which was filed (by the same Kelly Kasha) ***before*** both the reexamination for the ’205 patent and the filing of the application that became the ’474 patent. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) (explaining that pleadings may meet the standard of Rule 9(b) if they “allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind.”); *see also* Ex. 1 at 82-88 (October 18, 2018 IDS), Ex. 2 at 22-64 (Corrected Request for Supplemental Examination of U.S. Patent No. 9,373,205, filed on August 4, 2021), Ex. 3 at 91-93 (IDS filed on February 4, 2022 for the application that became the ’474 patent). Nevertheless, Kelly Kasha, John Kasha, Chris Outwater, and William Gibbens Redmann withheld these references from the Patent Office during the reexamination of

the ’205 patent, and instead offered the narrower Bröndrup reference, with the intent to deceive the Patent Office into allowing Urban Intel to modify the ’205 patent to cover limitations taught by the hidden Bliding and Robertson References. Moreover, during prosecution of the application that became the ’474 patent, Kelly Kasha filed an IDS on February 4, 2022 that omitted the Bliding and Robertson References. Ex. 3 at 91-93. Thus, Kelly Kasha, John Kasha, Chris Outwater, and William Gibbens Redmann carefully selected which references to disclose to the Patent Office and which to not, demonstrating an intent to deceive the USPTO. *See American Calcar, Inc. v. American Honda Motor Co.*, 768 F.3d 1185, 1190 (Fed. Cir. 2014).

Moreover, the IDS was filed on October 18, 2018, while Liberty’s case against Hilton Worldwide Holdings Inc. (“Hilton”) in this District (Civil Action No. NDIL-1-18-cv-03627) was pending, and Liberty filed a stipulation to stay certain deadlines in the Hilton proceeding ***the very next day***, on October 19, 2018, and then moved to stay the Hilton proceedings entirely based on a “settlement” on October 23, 2018. Ex. 4 at 8. While discovery is needed to reveal whether these dates are a coincidence, there is at least a reasonable inference that Liberty, the alleged inventors, and Liberty’s attorneys learned about the material Bliding and Robertson references during the Hilton litigation, and then actively chose not to disclose them during the reexamination to secure amended claims to reassert against Marriott. *See Costar Realty Information, Inc. v. CIVIX-DDI, LLC*, 946 F. Supp. 2d 766, 777-79 (N.D. Ill. 2013) (“At the pleading stage, by contrast, the proponent of inequitable conduct need only plead sufficient facts that the court ‘may reasonably infer’ knowledge and intent. [Plaintiff’s] allegations meet that standard, insofar as they identify a plausible motive and opportunity for hiding the relevant references from the PTO.”) (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d at 1328-29 & n. 5) (citation omitted). Moreover, this inequitable conduct as to one patent poisons the entire

portfolio. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d at 1288-89 ("[T]he taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and applications in the same technology family.") (*citing Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 808-12 (Fed. Cir. 1990)).

**FOURTH AFFIRMATIVE DEFENSE**
**(Waiver, Acquiescence, Estoppel, and/or Statute of Limitations)**

The remedies requested by Liberty under the asserted patent are barred by waiver, acquiescence, estoppel, and/or 35 U.S.C. § 286.

**FIFTH AFFIRMATIVE DEFENSE**
**(Claim Construction Estoppel)**

Liberty is estopped from asserting any interpretation of any of the claims of the asserted patent broadly enough to cover any of ASSA ABLOY's products because of statements, representations, amendments, omissions, and/or concessions it has made or will make to the USPTO during prosecution of the application for issuance of the Asserted Patents, during the reexamination of the '205 patent, during the reexamination of the '474 patent (No. 90/015,231), during inter partes review of the '205 patent (IPR2023-00815), '747 patent (IPR2023-00816), or '474 patent (IPR2023-00817), or by reasons of prior acts.

**SIXTH AFFIRMATIVE DEFENSE**
**(Prosecution History Estoppel)**

Liberty is estopped from taking positions regarding the scope the asserted claims of the Asserted Patents to cover or include, either literally or by application of the doctrine of equivalents, methods used or products manufactured, used, imported, sold, or offered for sale by ASSA ABLOY because of admissions, amendments, and statements to the USPTO during prosecution of the applications leading to the issuance of the asserted patent or related family

members, including statements made and acquiesced to during the reexaminations of the Asserted Patents.

**SEVENTH AFFIRMATIVE DEFENSE**
**(No Willful Infringement)**

Liberty is not entitled to a determination that ASSA ABLOY willfully infringed any of the Asserted Patents at least because ASSA ABLOY has not infringed, is not infringing directly, indirectly, by inducement of infringement or contributory infringement, or in any way (either literally or under the doctrine of equivalents), any valid and enforceable claims of the Asserted Patents. ASSA ABLOY has not willfully or deliberately infringed any claim of the Asserted Patents.

**EIGHTH AFFIRMATIVE DEFENSE**
**(Time Limitation on Obtaining a Reasonable Royalty)**

Liberty's alleged damages are limited by 35 U.S.C. §154(d).

**NINTH AFFIRMATIVE DEFENSE**
**(Failure to State a Claim)**

Liberty's claims for relief fail to state a claim upon which relief can be granted.

**TENTH AFFIRMATIVE DEFENSE**
**(Failure to Mark)**

Liberty and/or its predecessors in interest failed to mark a patented product or provide actual notice of infringement in order to recover damages. *See* 35 U.S. Code § 287.

**DEMAND FOR JURY TRIAL**

Defendant, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, ASSA ABLOY, having completely and fully provided its Answer to Liberty's First Amended Complaint, pray for a final judgment against Liberty, respectfully requesting the following relief:

A. A judgment that the claims of the asserted patent are invalid;

B. A judgment that ASSA ABLOY does not and has not infringed, either literally or under the doctrine of equivalents, the claims of the asserted patents;

C. Preliminary and permanent injunctive relief restraining Defendant and its agents, servants, employees, successors and assigns, and all others in concert and privity with them from wrongfully asserting any of the asserted patents against Plaintiff's products and services;

D. A judgment under 35 U.S.C. § 285 awarding ASSA ABLOY its costs and reasonable attorneys' fees expended in defending and maintaining this action; and

E. A judgment awarding ASSA ABLOY such other and further relief as the Court may deem just and proper.

Dated: September 8, 2023

Respectfully submitted,

*/s/Lionel M. Lavenue*
Lionel M. Lavenue
Virginia Bar No. 49,005
Finnegan, Henderson, Farabow,
Garrett & Dunner, LLP
1875 Explorer St., Suite 800
Reston, VA 20190
(571) 203-2700
lionel.lavenue@finnegan.com

*Attorney for Defendants ASSA ABLOY AB, ASSA ABLOY Mobile Services AB, and ASSA ABLOY Global Solutions AB*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2023, I caused a true and correct copy of the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

*/s/Lionel M. Lavenue*
Lionel M. Lavenue